**In the Interest of T.M.Z., A Child.**

**No. 04–82–00553–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 11, 1984.

---

Hal Hemstreet, Texas Dept. of Corrections, Sugarland, for appellant.

William Berchelmann, Darrell S. Dullnig, San Antonio, for appellee.

Before BUTTS, CANTU and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is a suit for termination of the parent-child relationship between the subject child, T.M.Z., and her father, appellant herein, J.A.Z., and for adoption of her by G.P., stepfather and appellee herein. Appellee L.P., mother of T.M.Z., and G.P., her husband, petitioned the trial court for termination pursuant to TEX.FAM.CODE ANN. § 15.02(1)(F), (H) and (2) (Vernon Supp.1982–1983).[1] Appellant was served with process in the Texas Department of Corrections and obtained a bench warrant enabling him to attend the nonjury trial. The trial court granted judgment for both termination and adoption. We affirm the judgment.

In his first point of error, appellant asserts there is no evidence or, in the alternative, insufficient evidence to support the finding of the trial court of each of the elements of section 15.02(1)(H). The specific elements upon which a court must base its termination order, if proved, are:

> [T]he parent has voluntarily, and with knowledge of the pregnancy, abandoned

---

1. Section 15.02(1)(F) provides that termination may be granted if the parent has failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. The judgment in this case makes no mention of this provision, although the petition contained such an allegation.

the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child, and remained apart from the child or failed to support the child since the birth.

In addition to finding that the acts or omissions of subdivision (H) occurred, the trial court must also find, as provided in division (2), of the Act, that termination is in the best interest of the child. The finding of the trial court, that termination is in the best interest of the child, is not challenged in this appeal. However, proof of elements in subdivision (H) is not excused because a court may be of the opinion that division (2) has been proved. *Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex.1976); *Diaz v. Beyer,* 611 S.W.2d 726, 731 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160, *reh. denied,* 456 U.S. 985, 102 S.Ct. 2261, 72 L.Ed.2d 864 (1982). Moreover, the elements must be proved by clear and convincing evidence. *In the Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The standard is defined in *Texas v. Addington,* 588 S.W.2d 569, 570 (Tex.1979), *vacated & remanded,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323:

> Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. This is an intermediate standard, falling between the preponderance standard of ordinary civil procedure and the reasonable doubt standard of criminal proceedings ... there is no requirement that the evidence be unequivocal or undisputed.

*See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982). This court's review of the evidence, when the challenge is "no evidence," is limited to that evidence favorable to the finding and the judgment rendered thereon; we must disregard all evidence to the contrary.

*Ray v. Farmer's State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979). When considering the "insufficient evidence" contention, we must examine all of the evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

█ The mother's testimony indicated that the father had a violent temper and that he "had been in prison or jail ... many times ... before and during [the marriage], off and on." She recounted how, when she was seven months pregnant with T.M.Z. in 1972, the father, in the midst of an argument, threw a radio "at my stomach." The radio went through the wall. This precipitated an immediate separation, the mother returning to live with her parents. The couple lived together at her parents' house after the child was born for a period of two months. They were divorced in 1973.

The mother testified the father never paid for any of the medical care, doctors, or hospital in connection with the pregnancy and birth. The father did not visit her or the child at the hospital. He saw the month-old child for the first time when the mother took her to visit him. There was an unequivocal statement that "he never has" provided any support or anything for T.M.Z. The mother lived with her parents until she married G.P. in 1975.

By the terms of the divorce decree the father could visit the child and he was ordered to pay $50.00 per month support for T.M.Z. He has never paid any child support. It was established the mother had not hidden the child or made her unavailable to the father during the years since her birth in October, 1972. The child apparently believed that G.P. was her father.

Upon cross-examination the mother denied the father was rebuffed when he came to her parents' house to talk with her; rather, she said, he visited the house and stole a typewriter from her parents. "[J.A.Z.] had a habit of going into my parents' house and taking things from them. There's a record at the Police Department. Many times we called the police." She

indicated the person who saw the father with the typewriter was present in the courtroom, "Diana." The mother stated she left when the radio was thrown at her. She stated she had previously been physically abused by him. "I was pregnant and I was not going to risk remaining there and having to face further physical abuse."

She emphatically denied that she told the father to stay away and that she did not want his help at all. Lawton testified he drove the father to the maternal grandparents' house in 1972 or 1973 on two occasions, but that the father was not permitted to enter the house. He said the father told him he wanted to leave some money. Although he said he had received four or five friendly letters from the father in prison, the letters made no mention of T.M.Z. The stepfather testified the father had contributed no child support since 1975 when he and the mother married. The mother stated there had been no support before that time.

Evidence established G.P. worked as a supervisor with the Texas Department of Human Resources, that another child, a boy, age 12 at the time of trial, had been born to the mother and appellant. G.P. supported him also. Further, the family, which included another daughter born to G.P. and the mother, seemed to be close and loving. The father refused to testify at the trial when the trial judge twice offered him the opportunity.

Although the evidence clearly shows it was the mother who left the scene when violence erupted during her seventh month of pregnancy, we do not agree there was no "voluntary abandonment" by the father as the result of her departure. The father knew where his pregnant wife went; he knew her parents and the location of their house. Testimony indicates he did go to that house on occasion, but he never provided any support either to his wife or his child. He was not prohibited from tendering support through the mails. He was not prohibited from going to the attending doctor's office to arrange payment for prenatal care. Nor was he denied entrance to the business office of the hospital to arrange payment for hospital care for his wife and for delivery of his child.

Abandonment can mean more than a physical leave-taking. It can also mean to turn one's back on a duty that one has. It is in that sense we hold the evidence is clear and convincing that J.A.Z. "voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child, and remained apart from the child *and* failed to support the child since the birth." Section 15.02(1)(H). In viewing the entire record and applying the clear and convincing standard of proof, we find the evidence sufficient to support the trial court's judgment terminating the parental rights of the father and granting the adoption of the child by G.P. The first point of error is overruled.

In his other point of error appellant argues the trial court should have filed findings of fact and conclusions of law as required by TEX.R.CIV.P. 297. Requests for these were sent to the district clerk of Bexar County. Appellant did not present the requests to the trial judge. *See Wade v. Anderson,* 602 S.W.2d 347 (Tex.Civ.App. —Beaumont 1980, writ ref'd n.r.e.). Filing the request with the clerk will not suffice. In this instance the trial judge attached to appellant's bill of exceptions his statement that no request had been sent to him and he had learned of it "a day or so prior to receipt of Respondent's Bill of Exception." There is nothing in the record to indicate the requests were ever presented to the judge. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977). The point of error is overruled.

The judgment is affirmed.