v.

**The STATE of Texas, Appellee.**

**No. 2–85–213–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 21, 1985.

Cantey, Hanger, Gooch, Munn & Collins and David C. Bakutis, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and Sullivan H. Bradley, Jr., Asst. Dist. Atty., Fort Worth, for appellee.

Before ASHWORTH, JOE SPURLOCK, II and HILL, JJ.

### OPINION

PER CURIAM.

W.L. appeals from his commitment to the Wichita Falls State Hospital for not more than 90 days. His commitment was based upon the jury's verdict that he is mentally ill, and that as a result of that illness he is likely to cause serious harm to himself, or that he will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently, and that he is unable to make a rational and informed decision as to whether or not to submit to treatment. In four points of error, W.L. questions the sufficiency of the evidence and the trial court's failure to submit to the jury a special issue which he requested.

We affirm, because we find that the evidence is sufficient, and because we find that the trial court did not err in failing to submit the requested special issue to the jury, because the issue was a question of law and not of fact.

In point of error number three, W.L. contends that the evidence is insufficient to support the jury's finding that he is likely to cause serious harm to himself, and in point of error number four, he asserts that the evidence is insufficient to support the jury's finding that if he were not treated that he would continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX.REV.CIV.STAT.ANN. art. 5547–50 (Vernon Supp.1985), located in Chapter 3, subchapter D of the Texas Mental Health Code, provides, in pertinent part:

(b) Upon the hearing, the judge or the jury, if one has been requested, shall determine that the person requires court-ordered mental health services only if it finds, on the basis of clear and convincing evidence, that:

(1) the person is mentally ill; and

(2) as a result of that mental illness the person:

(i) is likely to cause serious harm to himself; or

*　*　*　*　*　*

(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.

(c) The clear and convincing evidence must include expert testimony and unless waived, evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function.

*Id.* The Supreme Court of Texas has defined the quantum of proof necessary to constitute "clear and convincing evidence" in a mental health commitment proceeding, as follows:

Clear and convincing evidence is defined as that measure or degree of proof which

will produce in the mind of the trier of fact a firm belief or conviction as to the truth' of the allegations sought to be established. This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. While the state's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. [Citations omitted.]

*State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979).

Ted Lott testified that he is the nephew of W.L. He testified that W.L. had been under the treatment of Dr. Ann Turbeville, who had prescribed medication for him. He testified that within the past 90 days that W.L. had stopped taking his medication, and that W.L. would call him at two, three, and four o'clock in the morning, threatening to kill and harm different family members, such as Jimmy Lovelace, another nephew. One time he called and said that he was going to exterminate Jimmy and put the rest of the family under the ground. He also threatened his own sister, with whom he lived, saying, "I'm going to hurt her if she doesn't leave me alone and let me use the telephone." Lott said that immediately after W.L. made this threat that he went over to get the sister since she was 72 years of age. When he arrived, he found W.L. in a wild, hyper state. W.L. told him that he was upset with the Masons and the Shriners and he wanted to destroy them and get them out of the way. His face, hands, and feet were all swollen. He said that his sister had poisoned him with penicillin. Lott took W.L. to John Peter Smith Hospital.

Lott further testified that W.L. managed to wander out of the hospital following his admission. One night he spent the night on the corner of Vickery and South Main Street in Fort Worth. Lott said that on one occasion after leaving the hospital, W.L. went back to his sister's house and attempted to gain entrance through a window. The police took him back to the hospital.

W.L. told Lott that he had assaulted a female patient at the hospital and had jumped a policeman there, given him a judo chop, and thrown a can of urine in his face. He also told Lott that he had assaulted one of the staff members at the hospital. He told Lott that he would want to hurt anyone who testified at the trial. Lott related that W.L. calls him daily to tell him whom he wants to hurt. He told Lott that his sister is a witch and that the Bible says not to suffer a witch to live. Lott said that he had not ever seen W.L. actually hurt anyone.

James Lovelace testified that he is W.L.'s nephew. He said that when he went to his mother's house that W.L. would look at him and stare and kick bushes and slap the porch post, telling him that he knew judo and could take care of Lovelace even though Lovelace knew karate. Lovelace related that one night at 3:30 a.m. W.L. called him and told him to come get his camper shell or he was going to destroy it. Lovelace replied that he was not going to get the camper. Twenty minutes later, W.L. called back to tell Lovelace not to worry about the camper shell, but that he was going to sue Lovelace because he cut his finger while throwing the camper shell across the fence. Lovelace said that he found the shattered window of the camper shell later, but the camper shell itself was gone.

Lovelace said the W.L.'s personality had been different during the past 90 days. He testified that W.L. was hyper about everything, and that he would argue with everyone. Lovelace told how W.L. told him that he was going to kill him and take care of his wife and children by doing away with them. He said that W.L. harmed himself by not taking his medicine, thereby preventing himself from staying in his right mind.

Ann Turbeville, Director of Psychiatry at John Peter Smith Hospital, testified that she was W.L.'s treating physician. She said that W.L. suffers from chronic bi-polar

affective disorder, a mental illness. She characterized this disorder as an illness which substantially impairs the person's thought, perception of reality, and his emotional process or judgment, and that all of these showed impairment in W.L. She said that he suffers from delusions which interfere with his ability to deal with reality, and that his judgment and behavior are markedly impaired. She related how he would run up to people on the ward and say that he had seven deadly weapons in his hand, that he was a judo expert, and that he was going to hit someone. She said that he seemed to have a belief that he was above all rules and laws and that he could do whatever he pleased without getting into any trouble.

Dr. Turbeville expressed her opinion that W.L. would continue to deteriorate without treatment and that such deterioration was characteristic of this kind of illness. She said W.L. does not feel that he needs any further treatment, and that he wants to get out of the hospital. She related her opinion that he needs long-term treatment in a secure, controlled environment. Finally, she testified that while she has never known W.L. to hurt others, he places himself into dangerous situations. She particularly related that the records reflected that he had assaulted a member of her staff.

We find that this evidence is sufficient to support the jury's finding that W.L. is likely to cause serious harm to himself, and we find that the evidence is sufficient to support the jury's finding that if W.L. were not treated that he would continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. We overrule points of error numbers three and four.

In point of error number one, W.L. says that the trial court erred by denying his motion for directed verdict because the State had not met its burden pursuant to art. 5547–50(c) of the Mental Health Code. As we have previously noted, art. 5547–50(c) requires expert testimony and, unless waived, evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function.

We find that the evidence is sufficient to fulfill the requirement of art. 5547–50(c), because the testimony is clear and convincing, it includes expert testimony, and it includes evidence of both overt acts and a continuing pattern of behavior which tend to confirm the likelihood of serious harm to W.L., in addition to evidence of both overt acts and a continuing pattern of behavior tending to confirm W.L.'s distress and deterioration of his ability to function. We overrule point of error number one.

In point of error number two, W.L. urges that the trial court erred by not submitting this requirement of art. 5547–50(c) as a special issue to the jury. Article 5547–50(b) lists the fact issues which the judge or jury must determine at the hearing on an application for court-ordered temporary mental health services. Article 5547–50(c), rather than setting forth another fact issue to be determined, sets up some minimum requirements which the clear and convincing evidence must meet in order to be sufficient. Given the construction of the statute, this provision of art. 5547–50(c) would have been listed as an additional fact issue in art. 5547–50(b) had the legislature intended that such an issue was to be submitted to the jury. Article 5547–50(c) is intended as a guide to the court in determining the sufficiency of the evidence, not as a fact to be determined by the judge or jury. We overrule point of error number two.

The judgment is affirmed.