Judith BROUSSARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–277–CV.

Court of Appeals of Texas,
Corpus Christi.

April 2, 1992.

Ted Bishop, La Marque, for appellant.

Michael J. Guarino, Dist. Atty., Denise V. Wilkerson, Asst. Dist. Atty., Galveston, for appellee.

Before NYE, C.J., and BISSETT,[1] and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal from an involuntary commitment proceeding under the Texas Mental Health Code. Tex.Health & Safety Code Ann. §§ 571.001 *et seq.* (Vernon

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

Pamph.1992).[2] Judith Broussard appeals the trial court's order that she be involuntarily subjected to temporary mental health services for a period not to exceed 90 days, based on a jury's findings concerning the existence and consequences of Broussard's mental illness. Broussard brings four points of error challenging the sufficiency of the evidence and contending that the trial court erred in refusing to allow her to act as her own counsel or to subpoena certain witnesses. We reverse and render.

By her first and second points of error, Broussard challenges the legal and factual sufficiency of the evidence to support the jury's findings. In reviewing no evidence complaints in mental health commitments, we must only review the evidence favorable to the court's judgment, while in reviewing insufficient evidence complaints, we must review all the evidence to determine if the evidence was sufficient to produce a firm belief or conviction in the fact finder of the allegations plead. *K.L.M. v. State,* 735 S.W.2d 324, 326–27 (Tex.App.—Forth Worth 1987, no writ); *In Interest of T.M.Z.,* 665 S.W.2d 184, 186 (Tex.App.—San Antonio 1984, no writ).

Under Tex. Health & Safety Code Ann. § 574.034(a)(2) (Vernon Pamph.1992)[3], before a mentally ill person may be involuntarily committed for temporary mental health services, there must be clear and convincing evidence that as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington,* 588 S.W.2d 569 (Tex.1979). Furthermore, section 574.-034(c)[4] provides that:

To be clear and convincing under this section, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of ability to function.

At the commitment hearing in the present case, two medical experts testified concerning Broussard's mental illness. Dr. Morgan Levy, M.D., an intern in psychiatry at the University of Texas Medical Branch at Galveston, testified that he first met Broussard in the emergency room at John Sealy Hospital, after she had been apprehended for causing a disturbance at the courthouse by demanding that she was an attorney and that her case be heard. At the emergency room, Broussard showed no outward signs of illness aside from looking a little unkept in personal dress and hygiene. However, after Dr. Levy examined her, he diagnosed Broussard as suffering from chronic paranoid schizophrenia, essential features of which are the preoccupation with one or more systematized delusions. Dr. Levy testified that Broussard had six or seven prior admissions for this same condition. Some of the delusions that Broussard stated to Dr. Levy over the course of her present hospitalization included that she was an attorney, an FBI agent against whom a conspiracy was being directed, a former medical student at UTMB, that both Dr. Emory at the mental health facility and the trial judge below were mass murderers she had previously convict-

---

2. Formerly Tex.Rev.Civ.Stat.Ann. arts. 5547–1 *et seq.* (repealed).

3. Formerly Tex.Rev.Civ.Stat.Ann. art. 5547–50(b) (repealed).

4. Formerly Tex.Rev.Civ.Stat.Ann. art. 5547–50(c) (repealed).

ed and put in jail, that the other MHMR workers were convicted felons that she had put in jail, that Dr. Davis at the mental health facility is actually a woman dressed as a man, and that Broussard had not been taking her medication because it was poisonous.

Dr. Levy further testified that he believed that Broussard's mental illness required further treatment in order to prevent deterioration, and that she posed a possible risk of harm to herself or others if not treated. Dr. Levy stated that he saw a clear imminent risk that Broussard could place herself in a position to be harmed by others. Although she had never taken any direct action to physically harm herself, Dr. Levy testified that Broussard had "put herself in positions that press and force others to take bodily action against her." Nevertheless, Dr. Levy concluded that whether Broussard is likely to cause harm to self or others would be speculation.

Dr. Levy's diagnosis of chronic paranoid schizophrenia was confirmed by his supervisor, UTMB professor and faculty psychiatrist Dr. David Davis, M.D. Dr. Davis testified that he was Broussard's attending physician, and that he had been dealing with patients with this type of disorder for between 35 and 40 years.

Dr. Davis testified that Broussard had delusions and incoherency of thoughts, and that she tended to ramble about various ideas that had no relationship to the topic being discussed. She refused medication based on her ideas of "positive" and "negative" blood signs, and only agreed to take the medication Mellaril, but not in a sufficient dose to be therapeutic.

Dr. Davis also testified it is possible that Broussard could be harmed by others as a result of her delusional behavior irritating them. During her current hospitalization, Broussard had been somewhat hostile and has made provocative statements to others. However, Dr. Davis also stated that he believed it was unlikely that she would pose any danger to another person as a result of the delusional behavior, although he pointed out that notes from previous hospitalizations indicated that she had been involved in the removal of a child from another family.

Finally, based on prior history and almost a month's observations of changing delusional behavior, Dr. Davis concluded that it was likely Broussard will continue to deteriorate if not treated. He noted that she has continued with original delusions and produced new delusional material.

On Broussard's behalf, Larry Roton, a Galveston resident and neighbor who had known her for the past eight or nine years, testified that Broussard was about as normal as anybody, that she was a responsible housekeeper, that Roton had never noticed her to be emotionally upset or violent, and that she never tried to harm herself or others. Broussard also testified in her own behalf. Although she was able to testify to basic information about herself and her situation and to dispute the physicians' diagnosis and treatment plan, much of Broussard's testimony rambles and does not answer the questions asked.

The jury found that Broussard was mentally ill, that she was likely to cause serious harm to others, but not to herself, and that she would, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, continue to experience deterioration of her ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. Based on these findings, the trial court ordered a temporary involuntary commitment to the Austin State Hospital.

Specifically, by her first point of error, Broussard contends that the evidence was legally and factually insufficient to show that she was likely to cause harm to herself or to another or that she would continue to experience deterioration of her ability to function independently. By her second point of error, Broussard contends that the evidence was legally and factually insufficient because it failed under the requirements of section 574.034(c) to show a recent overt act or a continuing pattern of behavior tending to confirm the likelihood of serious harm to herself or others, or of her distress and the deterioration of her

ability to function. We will discuss these two points together.

The jury's findings support commitment under either section 574.034(a)(2)(B) harm to others, or section 574.034(a)(2)(C) distress and deterioration, but not section 574.034(a)(2)(A) harm to self.

■ We find no evidence that Broussard was likely to cause serious harm to others as a result of her mental illness. Though the expert medical witnesses acknowledged this as a "possibility" and there is a vague reference to some sort of incident involving another person's child, both experts agreed that it was not likely or a clear imminent risk. Bare psychiatric expert opinion of a "potential danger" to others is insufficient to support a commitment. *State for Interest of P.W.*, 801 S.W.2d 1, 3 (Tex.App.—Fort Worth 1990, writ denied); *Moss v. State*, 539 S.W.2d 936, 951 (Tex.Civ.App.—Dallas 1976, no writ). Thus, the commitment may not be supported under subsection (B) in order to prevent serious harm to others.

■ The judgment must be supported, if at all, by the jury's finding on distress and continued deterioration of ability to function, under subsection (C). There is expert psychiatric testimony that Broussard will continue to suffer from her mental illness if not treated, and Broussard's own irrational fear of poisoning and distrust of the hospital staff sufficiently shows that she is not able to make a rational and informed decision regarding her treatment. The question remains, however, whether there was also evidence of an overt act or continuing pattern of behavior showing Broussard's distress and the deterioration of her ability to function, as required by section 574.034(c).

■ Evidence of Broussard's continuing delusional behavior both before and during the present hospitalization may be sufficient in the present case to show that she suffers mental distress, but it does not sufficiently show the deterioration of her ability to function. Evidence which merely reflects that an individual is mentally ill and in need of hospitalization is no evidence

that the statutory standard has been met. *P.W.*, 801 S.W.2d at 3; *Lodge v. State*, 597 S.W.2d 773, 779 (Tex.Civ.App.—San Antonio 1980), *aff'd*, 608 S.W.2d 910 (Tex.1980). Specifically, psychotic behavior alone is insufficient to justify commitment on the grounds of mental distress and the deterioration of the ability to function independently. *See P.W.*, 801 S.W.2d at 3.

In the present case, the delusions themselves and vague generalizations about Broussard's hostile behavior and provocative statements during hospitalization, without further factual elaboration, do not show deterioration of her ability to function independently. Nor does the fact that Broussard was apprehended at the courthouse while under the delusion of being an attorney conveying papers to the district attorney show such a deterioration. There was no specific evidence about the facts of the disturbance except from Broussard herself, whose testimony suggests merely that when the district attorney's office recognized that her requests did not make sense and that she was mentally ill, they called a security officer.

Specifically lacking in the present case was any evidence of an overt act or continuing pattern of behavior that would generally affect Broussard's ability to function independently on a day-by-day basis without the imposition of court-ordered mental health services. *See In re J.S.C.*, 812 S.W.2d 92, 95–96 (Tex.App.—San Antonio 1991, no writ); *Holliman v. State*, 762 S.W.2d 656, 658 (Tex.App.—Texarkana 1988, no writ); *W.L. v. State*, 698 S.W.2d 782 (Tex.App.—Fort Worth 1985, no writ). We hold that the State has failed to sustain its burden of presenting evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of Broussard's deterioration of ability to function. While we are reluctant to deny court-ordered treatment to a woman who is obviously ill, we cannot lower the requirements imposed under section 574.034(c) of the Texas Mental Health Code regarding proof by clear and convincing evidence. We sustain Broussard's first and second points of error. Therefore, we

need not address her third and fourth points. *See* Tex.R.App.P. 90(a).

The judgment of the trial court is RE-VERSED, and judgment is here REN-DERED denying the State's petition for temporary court-ordered mental health services.