NUMBER 13-03-479-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

IN THE BEST INTEREST AND PROTECTION OF J.M.
                                                                                                                                      

On appeal from the Probate Court of Hidalgo County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Memorandum Opinion by Justice Yañez
 
            Appellant, J.M., appeals a Hidalgo County trial court’s judgment temporarily
committing him to a mental health facility for ninety days. By two issues, appellant claims:
(1) the physician’s medical examination certificates fail to comply with statutory
requirements of section 574.009 of the Texas Health and Safety Code;


 and (2) the
evidence is both legally and factually insufficient to support the trial court’s findings for
court-ordered mental health services. We affirm.



          As this is a memorandum opinion and the parties are familiar with the facts, we will
not recite them here except as necessary to advise the parties of the court’s decision and
the basic reasons for it.



          By his first issue, appellant argues that the physicians’ medical examination
certification forms fail to comply with the statutory requirements of Texas Health and Safety
Code Section 574.009.


 Appellant claims specifically that the forms do not indicate
whether they were authored by psychiatrists, which he argues is a requirement of the
statute. Consequently, appellant claims that the trial court erred in its order in light of the
alleged deficient certification forms. The State, in contrast, argues that appellant failed to
preserve this complaint for appellate review because appellant’s trial counsel failed to
object at trial. 
          To preserve a complaint for appellate review, appellant was required to make a
timely specific objection.


 A specific objection is one that enables the trial court to
understand the precise grounds so as to make an informed ruling and that affords the
opposing party the opportunity to remedy the defect if possible.


 
          In this case, the record reflects that appellant objected to the certificates on the
basis of hearsay. However, no objection was made regarding the physicians’ failure to
state that they were psychiatrists. Because the arguments advanced in this issue do not
comport with the specific objection made at trial, nothing is presented for our review.


 
Appellant’s first issue is therefore overruled. 
          By issue two, appellant challenges the legal and factual sufficiency of evidence
supporting the trial court’s decision “to order in-patient mental health services.” 
          In a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction
that its findings were true.


 We must assume that the fact finder settled disputed facts in
favor of its finding if a reasonable fact finder could do so and disregard all evidence that
a reasonable fact finder could have disbelieved or found incredible.


 This does not mean
that we are required to ignore all evidence not supporting the finding because that might
bias a clear and convincing analysis.



          The appropriate standard for reviewing a factual sufficiency challenge is whether the
evidence is such that a fact finder could reasonably form a firm belief or conviction about
the truth of the petitioner’s allegations.


 In determining whether the fact finder has met this
standard, we consider all the evidence in the record, both in support of and contrary to the
trial court’s findings.


 Further, we must consider whether disputed evidence is such that
a reasonable fact finder could not have reconciled that disputed evidence in favor of its
finding.


 If the disputed evidence is so significant that a fact finder could not reasonably
have formed a firm belief or conviction, then the evidence is factually insufficient.


 
          Under Texas law, a trial court can order temporary in-patient mental health services
if the court finds from clear and convincing evidence


 that the proposed patient is: 
(1) mentally ill; and 
 
(2) as a result of that mental illness the proposed patient: 
 
(A) is likely to cause serious harm to himself; 
 
(B) is likely to cause serious harm to others; or 
 
(C) is: 
 
(i) suffering from severe and abnormal mental,
emotional, or physical distress; 
 
(ii) experiencing substantial mental or physical
deterioration of the proposed patient’s ability to function
independently, which is exhibited by the proposed
patient’s inability, except for reasons of indigence, to
provide for the proposed patient’s basic needs,
including food, clothing, health, or safety; and 
 
(iii) unable to make rational and informed decisions as
to whether or not to submit to treatment.


 
          The health and safety code also provides that to meet the “clear and convincing”
standard of proof, the evidence must “include expert testimony and, unless waived,
evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1)
the likelihood of serious harm to the proposed patient or others, or (2) the proposed
patient’s distress and the deterioration of the proposed patient’s ability to function.


 A
medical diagnosis alone is not sufficient to confine a patient for compulsory treatment.


 
Expert opinions recommending involuntary commitment must be supported by a showing
of the factual basis on which they are grounded.


 
          The record reflects that on July 14, 2003, the trial court held an evidentiary hearing
to determine whether appellant should be temporarily committed. At the hearing, only two
witnesses testified, Dr. Moron, a psychiatrist at the Texas Rio Grande Mental Health and
Mental Retardation Center (RGMHMR), and appellant.
Doctor Moron’s Testimony 
          Dr. Moron confirmed that appellant suffered from schizophrenia and that he had
interviewed appellant on three different occasions, reviewed appellant’s medical records
from a previous hospitalization, and met with nurses and other staff members who had
regular contact with appellant during his previous hospitalization.  
          Dr. Moron’s staff members informed him that during appellant’s previous
hospitalization, appellant claimed he was God. When Dr. Moron confronted appellant
about this claim, appellant responded with a disorganized thought process and jumped
from idea to idea. According to Dr. Moron, appellant described his activities, which
included playing music for patients in the hospital, picking-up cigarette butts, and watering
dying rose bushes. During appellant’s previous hospitalization, he refused to take his
medications, which resulted in erratic, aggressive behavior. Consequently, hospital staff
administered emergency injections to appellant to suppress his dangerous behavior. 
          Dr. Moron testified that he met with appellant immediately prior to the hearing. 
During the meeting, appellant told the doctor that he was a judge for “his family’s mail,” an
“attorney,” and a “professional mariachi.” According to the doctor, appellant demonstrated
a disorganized thought process, rapid speech, had symptoms of “mania,” marked
impairment, and poor “insight of judgment regarding his mental illness. . .” 
          Additionally, the following exchange occurred between Dr. Moron and the district
attorney:
District Attorney:In your opinion, Doctor, do you believe that [appellant]
is likely to cause serious harm to others?
 
Dr. Moron: My opinion is that he will if he’s released at this point in
time. . . He feels that he has no psychiatric problem or
disorder, that he does not need the medication that the
physician feels will be effective, Risperdal, and because
of that the risk of his becoming violent and aggressive,
as he has in the past, is very high. 
District Attorney:Okay. Doctor, in your opinion do you believe that
[appellant] will continue to suffer from severe and
abnormal mental, emotional, physical distress if he’s not
further treated?
 
Dr. Moron:My opinion is that he will. As I mentioned above he still
continues with some symptoms of mania. He has also
had some marked impairment and insight of judgment
regarding his current mental illness, and my belief is he
. . . would decompensate further if released from the
hospital. Even in the hospital now he was on Abilify. 
On Abilify the doctor felt that it was not helping him,
tried to put him on Risperdal, and he’s refused that
medication. . .
          Based on his recent observations of appellant, his familiarity with appellant during
his previous hospitalizations, and appellant’s refusal to take all of his medications, the
doctor indicated that in his expert opinion, appellant should be temporarily committed.
Testimony of Appellant 
          Immediately following Dr. Moron’s testimony, appellant testified on his own behalf. 
According to appellant, in response to Dr. Moron’s claim regarding the rose bush, appellant
stated, “I had written to the public responsibility committee of the Rio Grande State Center,” 
and told them “I wish someone would take care of this rose bush that is dying here.” He
also claimed he sang to patients to “sooth[e] them, giving them music therapy.” Appellant
further testified that he gave his social security check to the poor. Appellant also claimed
that he “. . . feeds [himself] fairly well. . . and lose[s] weight because I don’t have a car and
I gave it to a man who said I don’t believe in God.” Finally, he admitted that the hospital
staff sedated him during his prior hospitalization because he refused to take his
medication. 
 
Affidavit of Maria Martinez  
          Appellant’s mother submitted a sworn affidavit detailing appellant’s behavior. 
According to her affidavit, appellant: (1) wanders about at night; (2) crawls on all fours in
the middle of the road; (3) refuses to take his medications; (4) is paranoid and delusional;
(5) refuses to admit he has a problem; and (6) continues to put himself in dangerous
situations. 
The Trial Court’s Findings 
          After hearing testimony from Dr. Moron and appellant, the trial court found that
appellant, if not committed, would “continue to suffer severe and abnormal mental . . . and
physical distress and will continue to experience deterioration of his ability to function. . .
he is unable to make a rational and informed decision as to whether or not to submit to
treatment.”


 Consequently, the trial court ordered appellant committed to the RGMHMR
for a period not to exceed ninety days. 
Analysis
          After reviewing the evidence in this case, we conclude the evidence is legally and
factually sufficient to support the trial court’s order of temporary commitment. 
          Appellant claims there was no evidence of a recent overt act or continuing pattern
of behavior that tended to confirm appellant’s distress and deterioration as required by
statute.


 Appellant also contends that Dr. Moron did not set forth any factual basis in
support of his testimony. We disagree.
          Regarding appellant’s first sub-issue, he relies on this Court’s holding in Broussard
v. State, 827 S.W.2d 619, 622-23 (Tex. App.–Corpus Christi 1992, no writ). In Broussard,
we reversed the trial court’s order of commitment because we determined that the
evidence was insufficient to support commitment.


 Broussard was diagnosed by two
medical experts as suffering from “chronic paranoid schizophrenia.”


 Broussard’s
delusions included that she was, inter alia, an attorney, an FBI agent, and a former medical
student.


 Finally, one of her physicians testified that Broussard admitted she had not been
taking her medication because it was “poisonous.”


 Based on the physician’s
observations, he believed Broussard required further treatment and that she posed a
possible risk of harm to herself or others if not treated.


 Broussard’s attending physician,
Dr. Davis, also testified that she had “delusions and incoherency of thoughts,” refused to
take her medication, and that she was somewhat hostile.


 He concluded that Broussard
could be harmed by others, and that it was likely Broussard would continue to deteriorate
if not treated.


 
          After hearing the evidence and testimony, the jury found that Broussard was
mentally ill, that she was likely to cause harm to others,


 but not to herself, and that she
would, if not treated, continue to suffer severe and abnormal distress and continue to
experience deterioration of her ability to function independently.


 The jury also determined
that Broussard was unable to make a rational and informed decision as to whether to
submit to treatment. Based on these findings, the trial court ordered that she be
committed.


 
          On appeal, we held that the State failed to prove the elements required for
involuntary commitment under section 574.034(a)(2)(B) of the health and safety code.


 
We held that there was no evidence Broussard was likely to cause serious harm to others
because both experts had agreed that it was neither likely nor a clear imminent risk.


 
Thus, we held that “[t]he judgment must be supported, if at all, by the jury’s finding on
distress and continued deterioration of ability to function, under subsection (C).”


 With
respect to subsection 574.034(a)(2)(C),


 we held that the State had failed to present
evidence of an overt act or continuing pattern of behavior that would generally affect
Broussard’s ability to function independently on a day-to-day basis without the imposition
of court-ordered mental health services.


 Consequently, we held that the State did not
sustain its burden “of presenting evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm the likelihood of Broussard’s deterioration of ability to
function.”


 
          We find the facts of this case distinguishable from Broussard. First, both experts
in Broussard agreed that it was unlikely that Broussard would harm others.


 In this case,
however, Dr. Moron testified that based on his observation of appellant’s behavior,
appellant would harm others if he does not receive treatment. According to the doctor, the
“risk of his becoming violent and aggressive, as he has in the past, is very high.“ 
          Second, in Broussard, we determined that continued delusional behavior may be
sufficient to demonstrate that an individual suffers from mental illness; however, we
concluded, on the facts in Broussard, that the evidence did not sufficiently demonstrate
that Broussard was experiencing a deterioration of her ability to function.


 In this case,
however, as a consequence of appellant discontinuing his medication, he began to
experience delusions, and crawled on “all fours” in the middle of the road. These actions
constitute overt acts demonstrating a continued pattern of deterioration and a threat to
appellant’s personal safety. Unlike Broussard, where the evidence failed to demonstrate
a deterioration of her ability to function,


 we conclude that appellant’s behavior up to trial
demonstrates a marked deterioration of his ability to function. 
          In regard to appellant’s second sub-issue concerning the factual basis of Dr.
Moron’s testimony, under Texas law, expert opinions recommending involuntary
commitment must be supported by a showing of the factual bases on which they are
grounded.


 
          Here, the record supports that Dr. Moron’s medical opinion and recommendation
were grounded in facts. As stated above, Dr. Moron’s interaction with appellant was
extensive. This was reflected in Dr. Moron’s testimony, which detailed the times he met
with appellant, the substance of their past meetings, and most importantly, his ability to
compare appellant’s past behavior with his condition immediately before and during the
hearing. We find appellant’s argument regarding Dr. Moron without merit.  
          “Texas law does not require relatives or physicians of the mentally ill (or the courts)
to stand idly by until serious harm occurs. . .[T]he purpose of temporary commitment is to
avoid just such harm.”


 Considering the evidence in the light most favorable to the trial
court’s finding, we conclude that evidence supports the trial court’s conclusion that
appellant was likely to suffer a substantially deteriorated ability to function independently
due to his severe mental distress and that he is unable to take the steps needed to remedy
it.


 Further, in this case, we conclude that the trial court reasonably found that the facts
justified commitment. We therefore hold that the evidence was legally and factually
sufficient to support the trial court’s order of commitment under section 574.034(a)(2)(C).


 
Appellant’s second issue is therefore overruled. 
          The judgment of the trial court is affirmed. 
 
                                                                                                                      
                                                          LINDA REYNA YAÑEZ
                                                                   Justice
 


Memorandum Opinion delivered and filed this
the 24th day of February, 2005.