NO.
12-06-00116-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
J.P.          §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            J.P. appeals
from an order for temporary inpatient mental health services. In his sole issue
on appeal, J.P. asserts the evidence is legally and factually insufficient to
support the order.  We affirm.

 

Background

            On
March 24, 2006, an application for court ordered temporary mental health
services was filed  requesting the trial
court to commit J.P. to the Rusk State Hospital (the “Hospital”) for a period
not to exceed ninety days.  At the time
the application was filed, J.P. was a patient at the Hospital. The application
was supported by two physician’s certificates of medical examination for mental
illness.  The first certificate stated
that, on March 23, 2006, Dr. Larry R. Hawkins evaluated and examined J.P. and diagnosed
him with bipolar disorder I, manic. 
Hawkins stated that J.P. had been under his care since March 23 and had
been receiving medication.  According to
Hawkins, J.P. was mentally ill and was likely to cause serious harm to
others.  As his basis for this opinion,
Hawkins stated that J.P. had pressured speech and flight of ideas and was
angry, sarcastic, and reportedly hypersexual. 
According to Hawkins, J.P. presented a substantial risk of serious harm
to himself or others if not immediately restrained, which was demonstrated by
his behavior, including pressured speech, flight of ideas, grandiosity, and
anger. 

            On
March 29, 2006, Dr. Jon A. Guidry evaluated and examined J.P. and diagnosed him
with bipolar disorder I manic.  Guidry
stated that J.P. had been receiving medication. 
According to Guidry, J.P. was mentally ill and was likely to cause
serious harm to others.  As his basis for
this opinion, Guidry stated that J.P. exhibited pressured speech and
grandiosity.  J.P. informed Guidry that
he wanted to be in the military, but if he was on “psych” medications, “they
won’t take” him. Guidry stated that, on March 26, J.P. received an emergency
injection and was transferred to another unit because another psychiatrist
documented that J.P. was sexually inappropriate and destroyed property.  According to Guidry, J.P. presented a
substantial risk of serious harm to himself or others if not immediately
restrained, which was demonstrated by his behavior, including J.P.’s statement
that he planned to stop his medication after he was discharged.  Further, J.P. required a body net on
March 26. 

            The
hearing on the application was held on April 4. 
At trial, Guidry stated that J.P. suffered from bipolar disorder,
manic.  Guidry concluded that J.P. was
likely to cause serious harm to others because he was transferred to Guidry’s
unit for his behavior, he required a body net on March 26 because of  his aggression, he required emergency
injections, and, at one point, he banged on the wall with his head and hands.  Guidry stated that J.P. was responding to
treatment and anticipated a short stay. 
According to Guidry, J.P.’s last emergency injection was within five or
six days of the hearing.  Guidry stated
that J.P. was intrusive into other people’s personal space and did not
recognize that approaching, “say[ing] things,” and being “always on” some
people leads to aggression, arguing, and fighting, “which he was earlier in his
stay.”  He also testified that J.P. was
manic and grandiose, had no insight, and exhibited pressure of speech. 

            According
to Guidry, recent reports indicated that J.P. wanted to treat his illness with
alcohol and marijuana rather than psychotropic medication, which would cause
him to promptly decompensate. At various times, J.P. had stated that he was not
going to take psychotropic medications because he could not be in the military
on these medications.  Guidry stated that
it would not be appropriate to release J.P. to his family because he still
exhibited a lack of insight and a lack of desire to continue medications.  He had also required several emergency
injections since his admission and required a body net.  Guidry believed that J.P.’s behavior could
lead to violence if he was not in a structured environment because he banged
his head and punched the wall, intruded into other people’s space, lacked
insight into his illness, and had some allegations of sexually inappropriate
conduct requiring him to be transferred to an all male unit. 

            Although
he stated that J.P.’s records include documentation of threats, Guidry did not
have documentation of an assault on anyone. 
Guidry admitted that J.P.’s condition had improved and he was taking
medication by written consent.  However,
Guidry did not currently consider J.P. a nondangerous individual.  According to Guidry, he did not know if J.P.
could survive safely in freedom either by himself or with the help of
responsible and willing family members or friends. Guidry stated that, on March
26, another physician recorded that J.P. was aggressive and sexually
inappropriate, resulting in a transfer to an all male unit.  This physician also noted that J.P. destroyed
property and attempted to “bust open” his forehead, requiring a body net.  However, no serious injuries were
reported.  In Guidry’s opinion, J.P. was
likely to cause harm to himself or others if he was in the outside world
without supervision, body nets, and emergency injections. 

            J.P.
testified that he agreed with the record presented to the trial court
reflecting his behavior at the Hospital. 
He denied wanting to hurt himself or anyone else.  J.P. did not believe it was in his best
interest to stay at the Hospital because he had a family to feed and people
depending upon him, including a seventy-six-year-old grandmother.  If J.P. were released, he would go to his
grandmother’s house in Huntsville and to his employer’s house.  J.P. maintained rental properties. According
to J.P., he was taking medications, believed that they were helping him, and
intended to continue taking these medications and to seek out appropriate
medical or psychological counseling. In fact, J.P. was planning to go to Mental
Health and Mental Retardation when he returned home. J.P. stated that he had
been fine until he had a manic episode.

            J.P.
testified that he banged his head against the wall because he was put in
seclusion and was upset.  According to
J.P., staff at the Hospital assaulted him, lied to him, and did not tell him
why he was moving.  He testified that the
Hospital staff “put” him on the ground and forced him, against his will, to
have an injection.  J.P. stated that he
could control himself and did not need medications to do so.  He also stated that the Hospital staff
removed him from seclusion for banging his head and fists, put him in the net,
and continued to antagonize him. 
According to J.P., he bangs his head and punches the wall to prevent
himself from aggressing against someone else. 
J.P. admitted that his behavior was not appropriate.  J.P. admitted that, before arriving at the
Hospital, he had medication, but was not taking it.  J.P. stated that, upon release, he would take
his medication.  When asked what had
changed, J.P. stated that he did not understand the question and that the State’s
counsel was his enemy and wanted him to stay in the Hospital.  In an answer to the trial court, J.P.
testified that he had bumps on his hands to keep from assaulting people. 

            On
April 4, the trial court found that J.P. was mentally ill, was likely to cause
serious harm to himself, and was likely to cause serious harm to others.  The trial court entered an order for
temporary inpatient mental health services, committing J.P. to the Hospital for
a period not to exceed ninety days.  This
appeal followed.

 

Sufficiency
of the Evidence

            In
his sole issue, J.P. argues that the evidence is neither legally nor factually
sufficient to support the order of commitment. 
J.P. contends that the testimony fails to show an overt act or a
continuing pattern of behavior that tends to confirm the likelihood of serious
harm to himself or others.  The State
disagrees.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder
could have disbelieved or found incredible. 
Id.  This does not
mean that we are required to ignore all evidence not supporting the finding
because that might bias a clear and convincing analysis.  Id. 








            The
appropriate standard for reviewing a factual sufficiency challenge is whether
the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations.  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  In determining whether the
fact finder has met this standard, we consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings.  Id. at 27-29.  Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.  

Involuntary Commitment Order

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness, he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his ability to function independently, which is
exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. § 574.034(a) (Vernon
2003). 

            To
be clear and convincing under this statute, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm
to the proposed patient or others or the proposed patient’s distress and the
deterioration of his ability to function.  Tex. Health & Safety Code Ann. §
574.034(d) (Vernon 2003).  Clear and
convincing evidence means the measure or degree of proof that will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. 
State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).  The statutory requirements for an involuntary
commitment are strict because it is a drastic measure.  In re C.O., 65 S.W.3d 175, 182
(Tex. App.–Tyler 2001, no pet.). 

            The
State provided expert testimony from Hawkins and Guidry who examined J.P. and
diagnosed him with bipolar disorder I, manic. 
However, expert testimony confirming mental illness, standing alone,
will not support an involuntary commitment. 
T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999,
no pet.).  Hawkins described J.P. as
grandiose, angry, sarcastic, reportedly hypersexual, with pressured speech and
flight of ideas.  Guidry stated that J.P.
exhibited pressured speech and grandiosity and was reportedly sexually
inappropriate.  Evidence of continuing
delusional or paranoid behavior merely reflects that an individual is mentally
ill and in need of hospitalization, but does not provide the continuing pattern
of behavior necessary to support a commitment. 
See In re C.O., 65 S.W.3d at 182; Broussard
v. State, 827 S.W.2d 619, 622 (Tex. App.–Corpus Christi 1992, no
writ).  

            An
expert opinion recommending commitment must be supported by the factual bases
on which it is grounded and not simply recite the statutory criteria.  See J.M. v. State, 178 S.W.3d
185, 193 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  What is necessary is the expert’s description
of the patient’s specific behaviors on which his or her opinion is based.  See id.  We must examine the record to determine
whether there is clear and convincing evidence showing an overt act or a
continuing pattern of behavior that tended to confirm the likelihood of J.P.’s
causing serious harm to himself or others. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 

            Guidry
reported that J.P.’s behavior, banging his head and hands against a wall,
required him to be restrained by a body net not long before the hearing.  J.P. said his actions prevented him from
assaulting or beating someone else.  In
fact, J.P. admitted to the trial court that he had bumps on his hands to keep
from assaulting people.  J.P. also
recognized that his behavior was not appropriate. According to Guidry, J.P.’s
behavior also included intruding into other people’s space, which might lead to
aggression, arguing, and fighting. 
Guidry seemed to indicate that J.P. had been arguing and fighting
earlier in his stay at the Hospital. 
According to Guidry, J.P. had to be administered emergency injections
and was transferred to an all male unit for allegedly sexually inappropriate
behavior.  Guidry stated that J.P. was
likely to cause serious harm to others because of the above behavior and that
his behavior could lead to violence without a structured environment.  Moreover, Guidry testified that J.P.
indicated that he wanted to treat his illness with alcohol and marijuana rather
than psychotropic medications.  Guidry
stated that if he did so, J.P. would promptly decompensate, i.e., his mental
disorder would appear or exacerbate due to a failure of his defense mechanisms.
 See The American Heritage Stedman’s Medical Dictionary 212
(1995). Additionally, J.P. did not want to take psychotropic
medications because he could not be in the military on these medications.  We consider J.P.’s admission of his
aggressive feelings toward others, his behavior of banging his head and hands
against a wall to prevent himself from assaulting others, and his threats to
others to be recent overt acts or a continuing pattern of behavior that tended
to confirm the likelihood of serious harm to others.  See Tex.
Health & Safety Code Ann. § 574.034(d).  We also note that viewing all the evidence in
the light most favorable to the findings, we conclude a reasonable trier of
fact could have formed a firm belief or conviction that J.P. is likely to cause
serious harm to others.  See Tex. Health & Safety Code Ann. §
574.034(a), (d); In re J.F.C., 96 S.W.3d at 266.  Therefore, the evidence is legally sufficient
to support the trial court’s order.  See
In re J.F.C., 96 S.W.3d at 266. 

            Having
determined that the evidence is legally sufficient to support the order, we
address factual sufficiency and consider all of the evidence, both that in
support of and contrary to the trial court’s findings.  See In re C.H., 89 S.W.3d at
27-29.  Guidry did not testify that J.P.
actually fought or harmed others.  Guidry
admitted that, although there was documentation of threats in J.P.’s records,
he did not have any documentary evidence that J.P. assaulted anyone.  Further, Guidry admitted that J.P. was taking
his medications by written consent at the time of the hearing. According to
J.P., his behavior of banging his head and hands against a wall occurred
because he was put into seclusion and was upset.  J.P. accused the Hospital staff of lying to
him, assaulting him, and antagonizing him, resulting in the body net and a
forcible injection.  Based upon our
review of the record as a whole, we conclude that, although there is some
disputed evidence, this evidence is not so significant that a reasonable trier
of fact could not have reconciled this evidence in favor of its finding and
formed a firm belief or conviction that J.P. was likely to cause serious harm
to others.  See Tex. Health & Safety Code Ann. § 574.034(a)(d);
In re J.F.C., 96 S.W.3d at 266. 
Therefore, the evidence is factually sufficient to support the trial
court’s order.  Id.  Having determined that the evidence is
legally and factually sufficient to support one of the criteria for committing
J.P. to the Hospital, we need not consider the additional criteria used to
support his commitment.  See Tex. Health & Safety Code Ann. §
574.034(a); Tex. R. App. P. 47.1.  Accordingly, we conclude that the trial court
met the obligations imposed by Section 574.034 of the Texas Health & Safety
Code and overrule J.P.’s sole issue.

 

Disposition

            The judgment
of the trial court is affirmed.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

Opinion delivered June 30,
2006.

Panel consisted of Worthen,
C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)