Affirmed and Memorandum Opinion filed January 12, 2006









Affirmed and Memorandum Opinion filed January 12, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00360-CV

NO. 14-05-00361-CV

____________

 

FOR THE
BEST INTEREST AND PROTECTION OF J.L.

 

______________________________________________________________

 

On Appeal from the Probate Court

Galveston County, Texas

Trial Court Cause Nos. 2495 & 2495A

______________________________________________________________

 

M E M O R A N D U M   O P I N I O N

In these accelerated appeals,
appellant, J.L., challenges the probate court=s order
of commitment for temporary inpatient mental health services and its order to
administer psychoactive medication.  In
three issues, J.L. contends the evidence is legally or factually insufficient to
support the probate court=s
orders.  We affirm.








I.  Factual and Procedural Background

J.L. is a 39 year old female with
a history of schizoaffective disorder of the bipolar type.  She had been in and out of hospitals and had
been treated with several different medications including Zoloft and
Risperadal, but decided to stop taking her medications.

Shortly before the proceedings
the subject of this appeal, J.L. had engaged in verbal altercations with
customers in the aisles of a Blockbuster video store.  The authorities were called, and she was
arrested and taken to the Texas City jail. 
From there, J.L. was taken to the emergency room at Rebecca Sealey
Hospital in Galveston, Texas. 

On February 23, 2005, she was
admitted to the hospital on a voluntary basis. 
At the hospital, an examination revealed that J.L. was psychotic with
loud, pressured speech, and auditory hallucinations.  J.L.=s status
became involuntary approximately one week after she was admitted and an
application for court-ordered temporary mental health services was filed.  Because J.L. refused to take medications
while in the hospital, an application to administer psychoactive medications
was also filed.

A hearing was held on March 7, 2005,
on both applications.  At the hearing on
the application for court-ordered temporary mental health services, the State
requested that the probate court order J.L. committed to the Austin State
Hospital for a period not to exceed ninety days.  Dr. Michael Stone, an expert witness for the
State, testified that J.L.=s mental
condition and recent behavior warranted involuntary commitment.  He supported his conclusions with recent
overt acts and continuing patterns of behavior.








In an order dated March 16, 2005,
the probate court found that J.L. was mentally ill and met the statutory
criteria for court-ordered temporary inpatient mental health services.  In its order, the probate court stated two
bases for its decision: (1) that J.L. is likely to cause serious harm to
herself, and (2) that J.L. is suffering severe and abnormal mental, emotional,
or physical distress; is experiencing substantial mental or physical
deterioration of her ability to function independently, which is exhibited by
her inability, except for reasons of indigence, to provide for her basic needs,
including food, clothing, health, or safety; and, is unable to make a rational
and informed decision as to whether or not to submit to treatment.  Based on these findings, the probate court
ordered J.L. committed to the Austin State Hospital for a period not to exceed
90 days.[1]  

On March 7, 2005, immediately
following the hearing on the temporary commitment of J.L., a hearing on
court-ordered administration of psychoactive medications was held.  On March 16, 2005, by separate order, the
probate court ordered the administration of antipsychotics, mood stabilizers,
antiolytics/sedatives/hypnotics, and antidepressants during J.L.=s
temporary commitment.  J.L. appeals both
orders.

II.  Analysis

In three issues, J.L. contends
there is legally[2]
or factually insufficient evidence to support the probate court=s order
of commitment for temporary inpatient mental health services and order to
administer psychoactive medication. 

A.        Burden of Proof

The trial court may order a
mentally ill patient to receive court-ordered temporary inpatient mental health
services only if the State proves by clear and convincing evidence:

(1) the proposed patient
is mentally ill; and

(2) as a result of that
mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or








(C) is:

(i) suffering severe and abnormal mental, emotional, or physical 

distress;

(ii) experiencing substantial mental or physical deterioration 

of the proposed patient=s ability to function independently, 

which is exhibited by the proposed patient=s inability, except 

for reasons of indigence, to provide for the proposed patient=s 

basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to

whether or not to submit to treatment.

 

Tex. Health &
Safety Code Ann. '
574.034(a) (Vernon 2003).  A trial court
must specify the criteria forming the basis for its decision to grant the State=s
application.  Id. '
574.034(c) (Vernon 2003).  

To constitute clear and
convincing evidence under '
574.034(a) of the Mental Health Code, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm: (1) the likelihood of serious harm
to the proposed patient or others; or (2) the proposed patient=s
distress and the deterioration of the proposed patient=s ability
to function.  Tex. Health & Safety Code Ann. '
574.034(c) (Vernon 2003).  A medical
expert=s
diagnosis of mental illness is not alone sufficient to commit a person for
compulsory treatment.  K.T. v. State,
68 S.W.3d 887, 892 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  The State=s expert
opinions and recommendations must be supported by a showing of the factual
basis on which they are grounded.  In
re. J.S.C., 812 S.W.2d 92, 95 (Tex. App.CSan
Antonio 1991, no writ).  

B.        Standard of Review








In a legal sufficiency review
where the burden of proof is clear and convincing evidence, we consider all of
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
findings were true.  In re. J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002).  We must
assume that the fact finder resolved disputed facts in favor of its finding if
a reasonable fact finder could do so, and must disregard all evidence that a
reasonable fact finder could have disbelieved or found to be incredible.  Id. 

In reviewing factual sufficiency
challenges, we review all the evidence in the record, both that in support of
and contrary to the trial court=s
findings.  In re. C.H., 89 S.W.3d
17, 27B29 (Tex.
2002).  We must give due consideration to
evidence the fact finder could reasonably have found to be clear and
convincing.  Id. at 25.  Under the clear and convincing standard this
Court must determine whether the evidence is such that the trier of fact could
reasonably form "a firm belief or conviction@ as to
the truth of the allegations sought to be established by the State.  Id. 
We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its
finding.  In re. J.F.C., 96 S.W.3d
at 266.  The court as the factfinder is
the exclusive judge of the credibility of the witnesses and the weight to be
given to their testimony.  In re
Estate of Canales, 837 S.W.2d 662, 669 (Tex. App.CSan
Antonio 1992, no writ).  

C.        Involuntary Commitment Order

Appellant maintains that she was
committed for merely refusing to take her medication and being mentally
ill.  She argues that these reasons alone
do not support an involuntary commitment because neither event standing alone
constitutes overt acts and continuing patterns of behavior.  We agree. 
See Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.CCorpus
Christi 1992, no writ).  But, the record
in this case reflects there is sufficient evidence of  recent overt acts and continuing patterns of
behavior that confirm the likelihood of serious harm to appellant.  See Tex.
Health & Safety Code Ann. '
574.034(c) (Vernon 2003). 








In support of J.L.=s
contention that the alleged behavior is either insufficient or no evidence of
overt acts and continuing patterns of behavior supporting her commitment, she
directs us to several cases.  First, she
refers us to Broussard, where the court held that Apotential
danger@ is
insufficient to support commitment.  Id.
at 622.  In Broussard,
however, the appellant had never harmed herself or others and the experts
agreed it was not likely.  Id. at
622.  In another case, the appellant
refused to take medication and ate three well balanced vegetarian meals a day
out of deference to animals.  In re
Breeden, 4 S.W.3d 782, 788B89 (Tex.
App.CSan
Antonio 1999, no pet.).  There, the court
held that being thin but eating sufficiently was the only overt act or
continuing pattern of behavior and therefore was insufficient evidence of
distress or deterioration of ability to function.  Id. at 790.  The other cases cited by appellant are
similar to these in that there are virtually no overt acts or continuing
patterns of behavior indicating the mentally ill person was likely to cause
harm to herself or others or to show the deterioration of her ability to
function.  In re Interest and
Protection of C.O., 65 S.W.3d 175, 181B82 (Tex.
App.CTyler
2001, no pet.) (making provocative statements and writing a letter that did not
threaten harm to others is insufficient to support involuntary commitment); In
re Interest and Protection of K.D.C., 78 S.W.3d 543, 551 (Tex. App.CAmarillo
2002, no pet.) (no history of harm to self or others and no overt acts or
continuing patterns of behavior constituted insufficient evidence to support
involuntary commitment); D.J. v. State, 59 S.W.3d 352, 357 (Tex. App.CDallas
2001, no pet.) (appellant who had no recent overt acts and who required neither
physical restraint nor seclusion was not likely to cause harm to herself); T.G.
v. State, 7 S.W.3d 248, 251 (Tex. App.CDallas
1999, no pet.) (a single possible incident of leaving gas burners on was not
evidence of a recent overt act or of a continuing pattern of behavior).  

Unlike the cases cited by
appellant, the record before us shows numerous overt acts and continuing
patterns of behavior by J.L. that meet the statutory requirement for
involuntary commitment including several altercations, assault of a police
officer, possible threats to her children, overt acts at home sufficient to
cause J.L.=s family to contact Adult
Protective Services, and the requirement of a restraint in the hospital. 








At the hearing for court-ordered
temporary mental health services, J.L. stipulated as to the State=s expert,
Dr. Michael Stone=s
qualifications in psychiatry as well as the admissibility of J.L.=s medical
records from the University of Texas Medical Branch.  Dr. Stone personally met with and evaluated
J.L.  He also reviewed her medical
records.  Dr. Stone diagnosed J.L. as
suffering from bipolar disorder with manic episodes and psychotic features.  He explained that J.L. demonstrated pressured
(or rapid) speech, disorganized thoughts, and had difficulty getting all of her
words out.  He opined that these
conditions were consistent with mania. 
Dr. Stone also testified that J.L. was likely to cause harm to herself
and recommended that she be committed for temporary mental health services.

Dr. Stone further testified that
J.L. was refusing medications and was insisting on taking St. John=s
Wort.  He explained that St. John=s Wort is
an herbal supplement that would accentuate J.L.=s mania
and thus was contraindicated.  By taking
it, J.L. would do harm to herself.  Dr.
Stone then discussed J.L.=s medical
records and several altercations delineated in her records.  Dr. Stone supported his opinions and
recommendations with recent overt acts and continuing patterns of
behavior.  He gave several examples from
his examination of J.L. and review of her medical records.  

J.L.=s medical
records reflect that she is confused, disorganized, and paranoid.  J.L. indicated to the attending physician
that people were plotting to harm her. 
For example, she felt that people were following her and that they
altered her vehicle=s brake
lines.  On March 9, 2005, J.L.
screamed at a male peer accusing him of coming after her.  While in the hospital, J.L. stated repeatedly
that she felt her family members were against her.  She did not want anyone at the hospital to
contact her family and did not want to return to live with her father.  J.L.=s family
indicated that since J.L. had stopped taking her medications, J.L. was
increasingly aggressive.  Thus, J.L.=s family
had filed a complaint with Adult Protective Services prior to her
admission to the hospital. 








J.L.=s medical
records also reflect that she had auditory hallucinations and bizarre
delusions.  J.L. was monitored every ten
minutes and was on assault, elopement, and suicide precautions.  For example, on February 21, 2005, the
attending physician noted that J.L. made veiled statements in the emergency
room such as, AI=m taking
my kids and me to heaven.@  Also, on March 3, 2005, the medical records
contained a notation that J.L. Amakes
comparison of her children being taken away to Jacob in the old Testament being
[ordered] to sacrifice Isaac.@  

Because of J.L.=s history
of violent behavior, irritable mood, and lack of cooperation, she was
determined to be at high risk for aggression and was monitored closely for
escalation in her behavior.  The medical
records as well as Dr. Stone=s
testimony document verbal altercations that occurred in the hospital.  For example, on February 28, 2005, J.L. Abecame
loud, argumentative, and confrontational with a male peer,@ and the
hospital staff had to intervene.  Several
days later, on March 3, 2005, J.L. was agitated, disruptive, threatening, and
speaking loudly in unintelligible speech inciting her peers to have the unit
doors opened.  J.L. would not listen to
redirection from the hospital staff and began beating on a table, cursing and
threatening the staff.  The campus police
were called and a chemical restraint was administered for the safety of J.L.
and others.    

J.L. testified on her own behalf
that she does not have a mental illness, but may have had one in the past.  She explained that she had been hospitalized
several times in the past and had taken several different medications, but they
made her feel like a zombie.  She wanted
to take St. John=s
Wort.  She then held a discussion with
the judge regarding taking St. John=s
Wort.  








J.L. could have endangered
herself by her recent verbal altercations in Blockbuster and at the hospital,
which could have provoked other people into committing violent acts towards
her.  The police were sufficiently
concerned about J.L.=s safety
to remove her from Blockbuster.  J.L.=s medical
records reflect that she has a history of violent episodes when in a manic
period including an assault on a police officer.  

ATexas law
does not require relatives or physicians of the mentally ill (or the courts) to
stand idly by until serious harm occurs . . . . [T]he purpose of temporary
commitment is to avoid just such harm.@  In re G.H. v. State, 94 S.W.3d 115,
117 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  Dr. Stone=s and
J.L.=s
testimony along with the medical records establish a continuing pattern of
behavior and recent overt acts that confirm J.L.=s
likelihood of causing serious harm to herself.  See id. at 115B16
(disruptive overt acts in the emergency room and at home sufficient to cause
family to contact mental health deputy satisfies statutory requirement for
involuntary commitment); Goldwait v. State, 961 S.W.2d 432, 435 (Tex.
App.CHouston
[1st Dist.] 1977, no writ) (selling belongings, sleeping in driveway one night,
desiring to purchase suction device to let blood, and having people close to
him fear for his well being is sufficient to involuntarily commit appellant); In
the Interest of R.M., 90 S.W.3d 909, 911 (Tex. App.CSan
Antonio 2002, no pet.) (leaving lit candles unattended, walking at night,
riding with strangers, and being so provocative that she could provoke people
into violence towards her is sufficient to warrant involuntary commitment for
mental illness).  

After reviewing the entire
record, we find that the trier of fact could have reasonably formed the firm
belief or conviction of that J.L. was mentally ill and likely to cause serious
harm to herself.  Reviewing the same
evidence in the light most favorable to the court=s
finding, we conclude that a reasonable factfinder could have formed a firm
belief or conviction that the State=s
allegations were true.  We therefore
conclude that the evidence is both factually and legally sufficient to support
the probate court=s
findings.[3]








Because only one criterion must
be met under section 574.034(a)(2) to form the basis of the probate court=s order
for temporary mental health services, we need not determine whether there was
sufficient evidence to satisfy additional criterion under the section.  In re R.M., 90 S.W.3d at 912.  We affirm the involuntary commitment
order.  

D.        Order to Administer Psychoactive Medication

J.L. contends that the probate
court erred in ordering the administration of psychoactive medication because
the court could issue an order authorizing the administration of psychoactive
medication only if J.L. was under a valid order for temporary or extended
mental health services under Section 574.034. 
See Tex. Health &
Safety Code Ann. ' 574.106
(Vernon 2003).  Thus, J.L. based the
success of this issue solely upon the success of her involuntary commitment
issue.  Because we overruled her
involuntary commitment issue, there is no foundation underlying her
psychoactive medication issue. 
Accordingly, we affirm the order to administer psychoactive medication
as well.

Having overruled the issues
raised by J.L., we affirm the probate court=s order
of commitment for temporary inpatient mental health services and order to
administer psychoactive medication.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed January 12, 2006.

Panel consists of Justices Fowler, Edelman, and Guzman.

 

 











[1]  Although the
ninety-day period has expired, the mootness doctrine does not apply to appeals
from involuntary commitments for temporary hospitalization such as this
appeal.  State v. Lodge,
608 S.W.2d 910, 912 (Tex. 1980).  





[2]  In her third
issue, J.L. contends there is no evidence to support the orders.  Legally insufficient evidence is a Ano evidence@
assertion.  In re. R.S.C., 921
S.W.2d 506, 511 (Tex. App.CFort Worth 1996, no writ).  





[3]  As has been
previously pointed out, A[t]he distinction between legal and factual
sufficiency when the burden of proof is clear and convincing evidence may be a
fine one in some cases, but there is a distinction in how the evidence is
reviewed.@  In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).