In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00028-CV


______________________________







THE STATE OF TEXAS FOR THE 


BEST INTEREST AND PROTECTION OF E.R.








 


On Appeal from the County Court at Law No. 2


 Hunt County, Texas


Trial Court No. M-09447




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 No doubt, E.R. is a woman who suffers from mental illness (1) and has not been particularly
cooperative with efforts intended to help her. But what comes before this Court is E.R.'s appeal of
the trial court's order committing her for temporary mental health services and directing that she be
given psychoactive medications. See Tex. Health & Safety Code Ann. § 574.034 (Vernon 2003). 
To justify such an order, the State must meet a rather rigorous set of proof requirements. Because
we find that the evidence is legally insufficient to show a recent overt act by E.R. or a continuing
pattern of behavior that tends to confirm either (a) the likelihood of serious harm to E.R. or others
or (b) her distress and the deterioration of her ability to function, we reverse the order of the trial
court  and  direct  E.R.'s  release  from  commitment.  See  Tex.  Health  &  Safety  Code  Ann.
§ 574.034(d).

(1) What Must Be Proven

 Orders for temporary mental health services are governed by Section 574.034 of the Texas
Health and Safety Code, which has very particular proof requirements:

 (a) The judge may order a proposed patient to receive court-ordered
temporary inpatient mental health services only if the judge or jury finds, from clear
and convincing evidence, that:

 

 (1) the proposed patient is mentally ill; and

 

 (2) as a result of that mental illness the proposed patient:

 

 (A) is likely to cause serious harm to himself;

 

 (B) is likely to cause serious harm to others; or

 

 (C) is:


 (i) suffering severe and abnormal mental, emotional, or physical distress;

 

 (ii) experiencing substantial mental or physical deterioration of the
proposed patient's ability to function independently, which is exhibited by the
proposed patient's inability, except for reasons of indigence, to provide for the
proposed patient's basic needs, including food, clothing, health, or safety; and

 

 (iii) unable to make a rational and informed decision as to whether or
not to submit to treatment; . . . .


Tex. Health & Safety Code Ann. § 574.034. If the judge or jury finds that the proposed patient
meets the prescribed commitment criteria, the judge or jury must specify which criterion forms the
basis of the decision. Tex. Health & Safety Code Ann. § 574.034(c). In this case, mental illness
is not disputed and there is no claim that E.R. is a threat to harm others. The two alternative grounds
for relief at issue are subsections (2)(A) and (2)(C).

 Clear and convincing evidence is that measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be
established. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2) (Vernon 2008); State v. Addington,
588 S.W.2d 569, 570 (Tex. 1979). Section 574.034(a) specifically requires that, to be clear and
convincing, the evidence must, unless waived, include expert testimony and evidence of a recent
overt act or a continuing pattern of behavior that tends to confirm (a) the likelihood of serious harm
to the proposed patient or others or (b) the proposed patient's distress and the deterioration of the
proposed patient's ability to function. Tex. Health & Safety Code Ann. § 574.034(d). The overt
act or continuing pattern of behavior "must relate to the criterion on which the judgment is based." 
See In re F.M., 183 S.W.3d 489, 492 (Tex. App.--Houston [14th Dist.] 2005, no pet.); J.M. v. State,
178 S.W.3d 185, 193 (Tex. App.--Houston [1st Dist.] 2005, no pet.).

 Because the State's burden of proof is clear and convincing evidence, we apply heightened
standards of review. See In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re M.M., 184 S.W.3d 416,
417-18 (Tex. App.--Dallas 2006, no pet.). In reviewing the legal sufficiency of the evidence where
the burden of proof is clear and convincing evidence, we consider all of the evidence in the light
most favorable to the finding (2) to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). 
We must assume that the trier of fact resolved disputed facts in favor of its finding if a reasonable
trier of fact could do so, and we must disregard all contrary evidence that a reasonable trier of fact
could have disbelieved or found to be incredible. Id.

 In reviewing factual sufficiency challenges, we review all the evidence in the record, both
supporting and opposing the trial court's findings. C.H., 89 S.W.3d at 27-29. We must give due
consideration to evidence the trier of fact could reasonably have found to be clear and convincing. 
Id. at 25. Under the clear-and-convincing standard, we determine whether the evidence is such that
the trier of fact could reasonably form "a firm belief or conviction" as to the truth of the allegations
sought to be established by the State. Id. We must consider whether disputed evidence is such that
a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. 
J.F.C., 96 S.W.3d at 266.

(2) The Trial Court's Findings

 The trial court ordered temporary mental health services for a time period not to exceed
ninety days and authorized the administration of psychoactive medication. (3) In its order, the court
found that E.R. is likely to cause serious harm to herself. It made further findings: she will, if not
treated, continue to suffer severe abnormal mental, emotional, or physical distress; she is
experiencing substantial mental or physical deterioration of her ability to function, which is exhibited
by her inability, except for reasons of indigence, to provide for basic needs including food, clothing,
health, or safety; and she is unable to make a rational and informed decision as to whether to submit
to treatment. 

(3) The Evidence Presented

 The State presented the testimony of Dr. A. Olufemi Layeni, M.D., a psychiatrist at the
Terrell State Hospital. Layeni was the only witness to testify at the hearing on the State's application. 
The record of the hearing on the State's application contains approximately nineteen pages of
testimony, a little over five of which are dedicated to testimony concerning the availability, possible
side effects, and overall effectiveness of psychoactive medication to treat E.R.'s mental illness. In
the remaining testimony spanning almost fourteen pages, most of the details tend to confirm only
the fact that, indeed, E.R. suffers from a mental illness, a fact not in dispute. Where the testimony
addresses necessary elements of proof on the issues in question, the State's questions and Layeni's
testimony, in many places, tracks the language of the statute. Thus, much of the testimony is
conclusory, especially as to the likelihood that E.R. will continue to deteriorate. While those
characteristics of the record do not make it impossible for the State to meet its burden of proof, we
offer them to show the relatively brief, largely conclusory record. Nonetheless, the question before
us is whether the State proved each element of the case by clear and convincing evidence.

 Layeni explained that E.R. first came to the hospital February 25, 2009, having been
transferred from the Medical Center of McKinney based on certain specific behaviors: (1) not taking
care of herself, (2) not taking medications, (3) not having food in the house, (4) barricading herself
in the house, and (5) not allowing any contact with those people trying to see to her welfare. He
testified that E.R. was supposed to be attending a mental health clinic on an outpatient basis but that
she had stopped going in December 2008. 

 Layeni testified that E.R. has been diagnosed with schizophrenia. When asked if she still
suffered from that condition, he replied, "I believe so." He went on to testify that, in this instance,
he has diagnosed E.R. with schizophrenia. His diagnosis was based on her history and the
information from referral sources. He explained that it has "been really difficult to get a history from
[E.R]. because she refuses to cooperate with the treatment team" and will not talk to anyone. All
efforts to "discuss and gain any meaningful information" from E.R. has been prevented by her refusal
to cooperate. 

 Layeni described the symptoms of E.R.'s mental illness. He conceded that there is no
evidence that E.R. suffers from hallucinations associated with schizophrenia, later clarifying that her
refusal to cooperate has prevented him from determining whether she is experiencing hallucinations. 

 Layeni concluded that E.R. is likely to cause herself serious harm if she is not treated
properly for her mental illness. He based this conclusion on the reports made before she arrived at
Terrell State Hospital, her failure to eat, her failure to take care of herself, and reports of the instance
in which she barricaded herself in her home without food. According to Layeni, such behaviors
suggest that E.R.'s illness is interfering with her ability to fend for herself. 

 Layeni added that E.R. will continue to deteriorate without treatment. Her condition is
deteriorating, and it began to do so after she stopped taking her medication. The symptoms of her
mental illness will return when medication is stopped, he says. According to Layeni, a patient who
goes untreated deteriorates and becomes withdrawn and paranoid, not talking to anyone, refusing any
help, and not eating. He explained that the worst case scenario will be starvation. He did not opine
whether that scenario was likely.

 Medical records from McKinney Medical Center, at which E.R. was first admitted, show that
she made comments to medical staff that family members or someone else had been stabbing her
with needles. Layeni testified that such delusions are consistent with the delusions that accompany
schizophrenia. The records also demonstrate that, at least at some point, E.R. believed that
medication was being put in her mouth while she slept. Layeni relied on these medical records in
developing his opinion about E.R. 

 The State asked Layeni to elaborate on what he thought would confirm that E.R. is likely to
cause serious harm to herself. He explained that her social withdrawal, refusal to talk to anyone, and
poor hygiene confirmed that she is likely to cause serious harm to herself. The doctor reiterated that
he believes E.R. will deteriorate further without treatment. He says he cannot determine whether
E.R. is able to provide food for herself or whether she just does not care to eat. He confirmed that
she has been eating at the hospital. 

 The State also presented the two required physician's certificates of medical examination for
mental illness, one from Layeni and the other from Dr. Doyle Carson of the Medical Center of
McKinney. See Tex. Health & Safety Code Ann. § 574.009(a) (Vernon 2003). Layeni's
certificate presents similar opinions and bases, citing that E.R. was not taking adequate care of
herself, was not keeping a sanitary home, did not have food in the home, was not bathing, was not
cooperating with her treatment, and was selectively mute. In an addendum, Layeni noted that, on
or about March 3, 2009, E.R. barricaded herself in her house, adding that she was staying in her
house without food and that she was refusing to allow visits from her caregivers. Carson's certificate
opines that E.R. poses a risk of serious harm to herself based on her failure to eat, failure to bathe,
refusal of medication, unsanitary state, and delusions that people were poisoning her and stabbing
her with needles. In an addendum to his report, Carson notes the following acts by E.R.: refusing
all medication, not eating, not bathing, and not allowing caregivers into her house. The addendum
does not detail the significance of these acts.

 The medical records admitted into evidence generally indicate that E.R. may have
experienced some hallucinations or, at least, some paranoia and confusion. Further, the records
show that E.R. was reluctant to cooperate with the hospital staff to some degree: she allowed them
to check her vital signs but refused medication they offered. E.R. was withdrawn, asocial, and
poorly groomed but was "eating well" and posed no behavior management problems. 

(4) Legally Insufficient Evidence Supports Trial Court's Findings

 E.R. does not challenge the trial court's finding that she suffers from a mental illness. See
Tex. Health & Safety Code Ann. § 571.003(14) (Vernon Supp. 2008) (defining mental illness). 
But an expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for
treatment. See M.S. v. State, 137 S.W.3d 131, 136 (Tex. App.--Houston [1st Dist.] 2004, no pet.);
Broussard v. State, 827 S.W.2d 619, 622 (Tex. App.--Corpus Christi 1992, no writ). Likewise,
evidence that merely reflects a patient's mental illness and need for hospitalization is insufficient to
meet the State's burden. See M.S., 137 S.W.3d at 136. The expert's opinions and recommendations
must be supported by a showing of the factual bases on which they are grounded. State ex rel. C.C.,
253 S.W.3d 888, 893 (Tex. App.--Dallas 2008, no pet.); State ex rel. E.E., 224 S.W.3d 791, 794
(Tex. App.--Texarkana 2007, no pet.); T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.--Dallas 1999,
no pet.). Put another way, the State must show more than delusions or other facts that merely
confirm a proposed patient's mental illness to meet the evidentiary standard for a temporary
commitment. See In re C.O., 65 S.W.3d 175, 182 (Tex. App.--Tyler 2001, no pet.). We now turn
to the record to determine whether the State did so.

 (a) The Likelihood of Serious Harm to E.R.

 The trial court found that E.R. "is likely to cause serious harm to self." To be clear and
convincing under Section 574.034(a), the evidence to support this finding must include expert
testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm
(1) the likelihood of serious harm to the proposed patient or others or (2) the proposed patient's
distress and the deterioration of the proposed patient's ability to function. Tex. Health & Safety
Code Ann. § 574.034(d). The overt act or continuing pattern of behavior "must relate to the
criterion on which the judgment is based." See F.M., 183 S.W.3d at 492; J.M., 178 S.W.3d at 193. 
A threat of harm to the patient must be substantial and based on actual dangerous behavior
manifested by some overt act or threats in the recent past. J.M., 178 S.W.3d at 193; In re K.D.C.,
78 S.W.3d 543, 547 (Tex. App.--Amarillo 2002, no pet.).

 Layeni testified that E.R. is likely to cause serious harm to herself, basing his opinion on prior
reports, her failure to eat, her failure to take care of herself, and the report of the barricading incident. 
He later added that E.R.'s social withdrawal, refusal to communicate, and poor hygiene demonstrate
a threat of harm to herself. We reiterate that Layeni's certificate of medical examination provided
the following bases for his opinion that E.R. poses a risk of serious harm to herself: she was not
taking adequate care of herself, she was not keeping a sanitary home, she did not have food in the
home, she was not bathing, she was not cooperating with her treatment, and she was selectively
mute. He also noted that E.R. barricaded herself in her home and added that she was staying in her
home without food and that she was refusing to allow visits from her caregivers although he did not
provide a specific connection between those acts and a specific opinion. Carson's certificate of
medical examination cited the following details as support for his opinion that E.R. is likely to cause
serious harm to herself: refusal to eat, failure to bathe, refusal of medication, unsanitary living
conditions, and delusions that people were stabbing her with needles and/or poisoning her. He added
notations to his certificate that concerned her refusal of medication, her poor eating and bathing
practices, and her refusal to allow caregivers into her home. Again, though, these notations do not
reveal the significance of the noted actions.

 The State presented evidence of an incident in which E.R. was said to have barricaded herself
in her home. Layeni referred to this incident in his certificate of medical examination, again, though
without explanation of the incident's significance. He also testified very briefly about the barricade
incident. We know nothing of the details of the barricade incident such as duration or manner of
barricading, but we do learn that, apparently, E.R. barricaded herself in her home out of fear that
someone was trying to harm her. This evidence is a recent overt act, but the record leaves uncertain
as to what the act may confirm. The record does not give us enough information to conclude that
the evidence satisfies the heightened burden placed on the State. What little the record does show
us about the incident suggests that the incident was brought about by E.R.'s paranoia, a symptom of
her mental illness. Further, the record would also suggest that E.R. barricaded herself in her home
as a measure of protection, albeit an effort most likely made in response to paranoia. Without more,
evidence of the incident lends no support to a finding that E.R. posed a risk of serious harm to
herself. As we have noted, that evidence confirming only that a proposed patient is mentally ill is
insufficient to meet the evidentiary standard for court-ordered mental health services. See C.O., 65
S.W.3d at 182.

 Layeni specifically cited E.R.'s refusal to communicate as evidence that she poses a risk of
serious harm to herself. His certificate of medical examination likewise refers to the fact that E.R.
remains "selectively mute." A patient's refusal to communicate with the hospital staff is insufficient
to support the finding required to authorize court-ordered mental health services. J.M., 178 S.W.3d
at 195. The evidence that E.R. remains selectively mute provides no support to the trial court's
finding that E.R. poses a risk of serious harm to herself. (4)

 There is also evidence that E.R. had not been eating properly. A proposed patient's refusal
to eat may be sufficient evidence to support an order for temporary commitment when there is
specific evidence of the patient's refusal and the resulting harm that refusal has caused to the
proposed patient. Compare K.T. v. State, 68 S.W.3d 887 (Tex. App.--Houston [1st Dist.] 2002, no
pet.) (evidence insufficient when State presented evidence of patient's refusal to eat while
hospitalized but failed to show that her refusal resulted in malnutrition or other harm) with E.E., 224
S.W.3d at 794 (evidence sufficient to show risk of harm to self when patient was found to be
dehydrated  after  admitting  she  had  been  fasting  for  one  week);  see  also  State  ex  rel.  Y.A-Y.,
No. 12-03-00242-CV, 2004 Tex. App. LEXIS 2961 (Tex. App.--Tyler Jan. 8, 2004, no pet.) (mem.
op.) (evidence sufficient where patient refused to eat and drink for days at a time, resulting in weight
loss and risk of dehydration). The San Antonio court concluded that the evidence was insufficient
when it showed that a proposed patient was not eating properly but failed to show the eating habits
resulted in weight loss or malnutrition. See In re Breeden, 4 S.W.3d 782, 788-89 (Tex. App.--San
Antonio 1999, no pet.).

 Here, we have very little information regarding E.R.'s eating habits. (5) We do not know, for
instance, how long she had been without food or whether there is a regular and continuous state of
bare cupboards. The record is silent as to whether E.R. has suffered any adverse health effects as
a result of her failure to maintain proper eating habits. Further, the record does show that E.R. has,
in fact, been eating at the hospital.

 Layeni testified that the "worst case scenario" would be that refusal of treatment could lead
to death by starvation. While we recognize this scenario as a compelling possibility that should
cause concern, it remains just that, a possibility. There is no evidence that would suggest that E.R.
has suffered any of the effects of starvation and no evidence that starvation or other ill effects were
likely. Evidence that the proposed patient might cause serious harm to himself or herself is
 insufficient  to  satisfy  the  second  element.  State  ex  rel.  L.C.F.,  96  S.W.3d  651,  657  (Tex.
App.--El Paso 2003, no pet.); C.O., 65 S.W.3d at 181-82; Broussard, 827 S.W.2d at 621-22.

 We conclude that the evidence is legally insufficient to support the trial court's finding that
E.R. is likely, as a result of her mental illness, to harm herself.

 (b) Distress and Deterioration

 Next, we examine the record for evidence of a recent overt act or a continuing pattern of
behavior that confirms the multifaceted finding under Section 574.034(a)(2)(C). (6) For this evidence
to meet the clear and convincing standard, it must show a recent overt act or a continuing pattern of
behavior that tends to confirm the proposed patient's distress and the deterioration of the proposed
patient's ability to function. Tex. Health & Safety Code Ann. § 574.034(d)(2). Layeni's
testimony suggested that E.R. will deteriorate as a result of the cessation of medication for her
mental illness. There is also some discussion regarding the delusions E.R. may be having. We will
discuss each item of evidence in turn. 

 First, Layeni testified that he believes E.R. will deteriorate further without treatment. This
conclusion, without the required evidence of a recent overt act or a continuing pattern of behavior
of the risk of serious harm to herself or evidence confirming her distress and deterioration of her
ability to function, is insufficient to satisfy the State's burden to present clear and convincing
evidence. An expert opinion recommending commitment must be supported by the factual bases on
which it is grounded and not simply recite the statutory criteria. See J.M., 178 S.W.3d at 193. 
Evidence of refusal to take medication, alone, is not an overt act or continuing pattern of behavior
tending to confirm a proposed patient's distress or a deterioration of the ability to function. See
Armstrong, 190 S.W.3d at 252-54; Johnstone, 961 S.W.2d at 389. We add that evidence that the
proposed patient will experience substantial mental or physical deterioration in the future does not
establish this element. See Armstrong, 190 S.W.3d at 252-53 (evidence showed only that patient
was beginning to deteriorate due to her refusal to take medications for her chronic health problems,
not that she was currently experiencing substantial deterioration of her ability to function
independently).

 Although Layeni admitted that he could not determine whether E.R. is currently experiencing
hallucinations or delusions, the medical records suggest she may be experiencing hallucinations to
some degree, reporting that people had been stabbing her with needles, poisoning her, and attempting
to medicate her while she slept. Assuming that these scenarios are, in fact, hallucinations and that
no one is trying to medicate her while she sleeps or give her injections, we note that evidence of
hallucinations or delusions alone is insufficient to justify involuntary commitment on the grounds
of mental distress and the deterioration of the ability to function independently. See C.C., 253
S.W.3d at 895; (7) F.M., 183 S.W.3d at 499-500.

 [E]vidence of the effects of mental illness does not necessarily establish evidence of
substantial mental or physical deterioration unless the effects impair a person's ability
to function independently to provide for basic needs. For example, poor grooming
is insufficient "to justify depriving an individual of her liberty." Poor hygiene and
"oppositional behavior" also demonstrate mental illness, but alone do not rise to the
level of an overt act or pattern of behavior that confirms a substantial deterioration
of a person's ability to function independently to provide for her basic needs. 
Evidence of poor insight and judgment, lack of trust towards others, insomnia, and
diminished weight are likewise serious health problems, but they must be coupled
with evidence that Armstrong is suffering substantial deterioration of her ability to
provide for her basic needs. Although the evidence shows that Armstrong is
mentally ill, has physical health problems, and has been previously hospitalized for
the mental illness, the State offered no testimony that, as a result of her mental
condition, she is unable to function independently as exhibited by her inability to
provide for her basic needs.

Armstrong, 190 S.W.3d at 252 (citations omitted).

 The evidence is legally insufficient to show a recent overt act or continuing pattern of
behavior that tends to confirm E.R.'s distress and deterioration of her ability to function.



(5) Conclusion

 The evidence is insufficient to show a recent overt act or a continuing pattern of behavior that
tends to confirm the likelihood of serious harm to E.R. Likewise, on the record before us, we cannot
say that the evidence would lead a reasonable trier of fact to form a firm belief or conviction that
E.R. had engaged in a recent overt act or a continuing pattern of behavior tending to confirm her
distress and the deterioration of her ability to function. See Tex. Health & Safety Code Ann.
§ 574.034(d).

 We reverse the trial court's order and render judgment denying the State's application for
mental health services. Having rendered such judgment, we accordingly order E.R.'s immediate
release from the institution to which she has been committed. See Tex. Health & Safety Code
Ann. § 574.033(b) (Vernon 2003); see also Tex. R. App. P. 43.2(c). Our mandate will issue
immediately upon motion, should appropriate action not be taken in accordance with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 9, 2009

Date Decided: April 29, 2009
1. E.R. has been diagnosed with schizophrenia.
2. An order of commitment may not be upheld on a factual basis that was urged to, yet was
rejected by, the trial court. Johnstone v. State, 961 S.W.2d 385, 388 (Tex. App.--Houston [1st Dist.]
1997, no writ).
3. We do not have a copy of the order authorizing psychoactive medication in the record before
us, although it was originally and mistakenly attached as an exhibit to the court reporter's record, a
mistake which was promptly corrected. Although E.R. challenges the sufficiency of the evidence
to support the trial court's findings in that order, her notice of appeal did not indicate that she was
appealing that order specifically. Nonetheless, the order authorizing administration of psychoactive
medication must be supported by a valid order for temporary mental health services. See Tex.
Health & Safety Code Ann. § 574.106(a)(1) (Vernon 2008). That said, if the order for temporary
mental health services is found to be unsupported, the order authorizing administration of
psychoactive   medication   will,   likewise,   fail.   See   Tex.   Health   &   Safety   Code   Ann.
§ 574.104(a)(3) (Vernon Supp. 2008), § 574.106(a)(1).
4. To the extent that the evidence that E.R. was selectively mute is relevant to the distress and
deterioration finding, we also conclude that such evidence is insufficient. When faced with evidence
of poor hygiene, mania, and oppositional behavior, the Tyler court concluded that such evidence
merely demonstrated the proposed patient's mental illness and failed to constitute evidence of a
recent overt act or continuing pattern of behavior that demonstrated distress or tended to confirm a
substantial deterioration of the proposed patient's ability to provide for his own basic needs. See In
re B.S., No. 12-02-00217-CV, 2003 Tex. App. LEXIS 4640, at *13-14 (Tex. App.--Tyler May 30,
2003, no pet.) (mem. op.). Indeed, courts have generally treated poor grooming as insufficient to
justify depriving an individual of his or her liberty and poor hygiene, while demonstrative of mental
illness, as falling short of an overt act or pattern of behavior that confirms a substantial deterioration
of a person's ability to function independently to provide for his or her basic needs. See K.E.W. v.
State, 276 S.W.3d 686 (Tex. App.--Houston [1st Dist.] 2008, no pet.); Armstrong v. State, 190
S.W.3d 246, 252 (Tex. App.--Houston [1st Dist.] 2006, no pet.).
5. Layeni testified that he could not say whether E.R.'s eating decisions were based on her
choice or her inability to provide food for herself, at least suggesting that indigence may be the
reason for E.R.'s failure to eat properly. Adding to the suggestion, the record shows that E.R. has
been eating in the hospital. Section 574.034 specifically excepts "reasons of indigence" as a basis
for a finding that a proposed patient cannot provide for his or her basic needs. Tex. Health &
Safety Code Ann. § 574.034(a)(2)(C)(ii); State for the Best Interest & Prot. of S.C., No. 05-08-00373-CV, 2008 Tex. App. LEXIS 6095, at *14 (Tex. App.--Dallas Aug. 13, 2008, no pet.) (mem.
op.). So, the evidence that E.R. was not eating properly would also fail to constitute a continuing
pattern of behavior that would confirm E.R.'s distress and the deterioration of her ability to function. 
See Tex. Health & Safety Code Ann. § 574.034(d). 
6. We must find sufficient evidence of the following three elements: (1) patient is suffering
severe and abnormal mental, emotional, or physical distress; (2) patient is experiencing substantial
mental or physical deterioration of the proposed patient's ability to function independently, which
is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the
proposed patient's basic needs, including food, clothing, health, or safety; and (3) patient is unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a)(2)(C).
7. The Dallas court provided a comprehensive list of cases concerning evidence of delusions
as it relates to the finding required for court-ordered mental health services. See C.C., 253 S.W.3d
at 894-95. A reading of those and other cases would suggest that proposed patients would have had
to have done some act or made some omission based on these hallucinations or delusions and that
such act or omission demonstrates the deterioration of the ability to function. Such a step is
consistent with the statutory requirement that the record demonstrate an overt act or a continuing
pattern of behavior.