# NO. 12-18-00204-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | *§* | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | *§* | *COUNTY COURT AT LAW* |
| *PROTECTION OF J.G.* | *§* | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

J.G. appeals from the trial court's order renewing an order for extended inpatient mental health services and an order authorizing the administration of psychoactive medication. In three issues, he challenges both orders. We affirm.

### BACKGROUND

On July 13, 2018, an application for renewal of an order for extended mental health services was filed requesting the trial court to commit J.G. to the Rusk State Hospital (the Hospital) for a period not to exceed twelve months. At the time the application was filed, J.G. was a patient at the Hospital. The application was supported by two physician's certificates of medical examination for mental illness.

Calvin Gerke, M.D. evaluated and examined J.G. and diagnosed him with schizoaffective disorder, bipolar type, and polysubstance dependence. Gerke also diagnosed him as being a noncompliant patient with histories of traumatic brain injury, osteoarthritis, methicillin-resistance Staphylococcus aureus (MRSA), priapism, recurrent pneumonia, cataract (right eye), trauma (right eye), dysphagia, apparent lesion in chest from ground glass, constipation, hypothyroidism, dyslipidemia, chronic obstructive pulmonary disease (COPD), and a vitamin D deficiency. According to Gerke, J.G. stated on July 11, 2018, that he owns many shopping malls; that he is the "sun in the sky" and that the planets move around him; that when he sits down, he starts "to

lose stuff that I have," i.e., stores and shopping malls; that he was completely sane; that he did not show signs of psychosis; and that he has been part of the Hospital since its foundation.

From May 1, 2018 through July 11, 2018, Gerke stated that J.G. urinated on the floor in his room and did not clean it; declined to take Lithium on five occasions in June 2018; and has not required behavioral restraints since an incident in February 2018 when he hit a psychiatric nursing assistant in the mouth without provocation. However, on July 11, 2018, Gerke stated that J.G. came to the conference room in the Hospital with staff and refused to sit down. J.G. answered questions and appeared to respond to external stimuli. Finally, Gerke stated that J.G. was mentally ill, and that as a result of that mental illness was suffering severe and abnormal mental, emotional or physical distress, was experiencing substantial mental or physical deterioration of his ability to function independently, and was unable to make a rational and informed decision about whether to submit to treatment.

Andrey Tsyss, D.O. also evaluated and examined J.G. and diagnosed him with schizoaffective disorder, bipolar type, and polysubstance dependence. Tsyss also diagnosed J.G. with osteoarthritis and histories of MRSA, recurrent pneumonia, hypothyroidism, dysphagia, and aspiration pneumonitis. According to Tsyss, J.G.'s mental health treatment has been hospital management. From May 1, 2018 through July 5, 2018, J.G. told Tsyss that he stands during recovery team meetings to prevent losing "shopping malls" and that he had "a lot of them." He stated that he is the "sun in the sky" and that the "planets move around him." J.G. also threw his Glucerna at the staff and made racial slurs; urinated on the floor of the room and did not clean it; refused to take his Lithium five times during June 2018; and did not follow the rules such as sharing items with peers.

Finally, Tsyss stated that J.G. was mentally ill, and that as a result of that mental illness was suffering severe and abnormal mental, emotional or physical distress, was experiencing substantial mental or physical deterioration of his ability to function independently, and was unable to make a rational and informed decision about whether to submit to treatment. Additionally, Tsyss completed an application for an order to administer psychoactive medication.

On July 17, 2018, the trial court held a hearing on the applications. At the conclusion of the hearing, the trial court granted the applications. On the same date, the trial court signed an order renewing an order for inpatient extended mental health services. The trial court found by clear and convincing evidence that J.G. was mentally ill and as a result of that mental illness was

likely to cause serious harm to himself or others or will, if not treated, continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court also found that J.G.'s condition is expected to continue for more than ninety days, and that he received inpatient mental health services for at least sixty consecutive days within the twelve months immediately preceding the hearing. Thus, the trial court ordered that J.G. be committed for court ordered inpatient extended mental health services for a period not to exceed twelve months. The trial court also rendered an order authorizing the Department of State Health Services to administer psychoactive medications to J.G. This appeal followed.

## ORDER FOR INPATIENT
## EXTENDED MENTAL HEALTH SERVICES

In his first issue, J.G. argues that the evidence is legally insufficient to support the trial court's order. More specifically, he contends there is no evidence that he was experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety.

### Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

### Extended Inpatient Mental Health Order

The trial judge may order a proposed patient to receive court ordered extended inpatient mental health services only if the jury, or the judge if the right to a jury is waived, finds, from clear and convincing evidence, that

    (1)  the proposed patient is mentally ill;

3

(2) as a result of that mental illness, he

> (A) is likely to cause serious harm to himself;
> (B) is likely to cause serious harm to others; or
> (C) is
> > (i) suffering severe and abnormal mental, emotional, or physical distress,
> > (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and
> > (iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

> (3) his condition is expected to continue for more than ninety days; and

> (4) he has received court ordered inpatient mental health services under this subtitle or under Chapter 46B, Code of Criminal Procedure, for at least sixty consecutive days during the preceding twelve months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (West 2017).

To be clear and convincing under this statute, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. *Id*. § 574.035(e) (West 2017). The statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to the proposed patient is probable if the person is not treated. *See State v. K.E.W.*, 315 S.W.3d 16, 24 (Tex. 2010). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). The statutory requirements for an involuntary commitment are strict because it is a drastic measure. *In re C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.).

**Analysis**

On appeal, J.G. does not dispute that he is mentally ill, he is unable to make a rational and informed decision as to whether or not to submit to treatment, his condition is expected to continue for more than ninety days, and he has received court ordered inpatient mental health services for at least sixty consecutive days during the preceding twelve months. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). Thus, we will consider whether the evidence is legally sufficient to support a finding that he is experiencing substantial mental or physical deterioration of his ability to function independently. *See id.*

4

At the hearing, Dr. Gerke's and Dr. Tsyss's certificates of medical examination for mental illness were admitted into evidence. We note that nothing in the Texas Health and Safety Code authorizes a trial court to base its findings solely on the physicians' certificates. *See id.* § 574.001-.047 (West 2017 & Supp. 2018). Pleadings, such as the application here, are not evidence that the statutory standard has been met. *See **id**.* § 574.031 (West 2017) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); ***In re E.T.***, 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no pet.); *see also **Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer***, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn or verified).

Further, expert testimony confirming mental illness, standing alone, will not support an involuntary commitment. *See **T.G. v. State***, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.). Evidence of continuing delusional or paranoid behavior merely reflects that an individual is mentally ill and in need of hospitalization, but does not provide the overt act or continuing pattern of behavior necessary to support a commitment. *See **In re C.O.***, 65 S.W.3d at 182; ***Broussard v. State***, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ). An expert opinion recommending commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *See **J.M. v. State***, 178 S.W.3d 185, 193 (Tex. App—Houston [1st Dist.] 2005, no pet). What is necessary is the expert's description of the patient's specific behaviors on which the expert's opinion is based. *See **id**.* We must examine the record to determine whether there is clear and convincing evidence showing an overt act or a continuing pattern of behavior that tends to confirm the likelihood of J.G.'s distress and the deterioration of his ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(e).

Here, Dr. Tsyss testified at the hearing that he examined J.G. on July 5, 2018. He stated that J.G. is mentally ill and diagnosed him with schizoaffective disorder, bipolar type; polysubstance dependence; osteoarthritis; and histories of MRSA infection, recurrent pneumonia, hypothyroidism, dysphagia, and aspiration pneumonitis. He did not believe that J.G. could provide for his basic needs, such as food, clothing, health, or safety outside the Hospital setting. Nor is J.G. able to make a rational and informed decision about whether or not to submit to treatment. Tsyss believes that J.G.'s condition is likely to deteriorate if he does not remain in the Hospital and receive treatment, and that his condition is expected to last for more than ninety days. Further,

Tsyss testified that J.G. received inpatient mental health services for at last sixty consecutive days during the preceding twelve months, acknowledging that J.G. has been at the Hospital since 2010.

Regarding an overt act or pattern of behavior that led to Tsyss's conclusions, Tsyss testified that J.G. demonstrated a disorganized thought process with multiple delusions related to owning businesses, such as Wal-Mart and the Hospital, and being a doctor or a general in war. J.G.'s delusions continue to dictate some of his behavior, such as sitting, having his vitals taken, and completing medical tests. Tsyss stated that J.G. usually does not sit during Recovery Team meetings and, instead, remains standing. When asked why he does not sit, J.G. will explain that he cannot sit or he will lose something, such as properties or businesses that he owns. According to Tsyss, J.G. once referred to shopping malls that he owns. J.G. believes that there is a connection between sitting down and being able to own his businesses and that if he sits, he would lose those businesses, "the war," or suffer "very significant losses."

Tsyss stated that J.G.'s hygiene varied and was sometimes "suboptimal." J.G. refuses to eat regular meals offered in the cafeteria on some kind of "delusional grounds" and instead, consumes large amounts of Glucerna or snacks sent from his family. He does not realize that the Glucerna or snacks are inferior compared to the cafeteria food. J.G. suffers from ongoing constipation and blames it on the Lithium. However, Tsyss stated, J.G.'s preferred meals, such as Glucerna, do not stimulate the intestines and would, inevitably, lead to constipation. Nonetheless, he said, J.G. refused his Lithium five times in June 2018. According to Tsyss, J.G.'s delusions effect his meal consumption, his health, and his compliance with medications.

J.G. testified that if he were released, he would go "somewhere in Montgomery County." He stated that he is in the "service," and he was supposed to have people around him that provided money because that is the way that it is "set up." He stated that in the Bible or "maroon book" it says that a man who has oil will have some money as long as it is not "squandered." J.G. testified that he has oil but that he lived with service people doing "recon" back in the 1970's and they "always handled everything." He stated that they are dead now or that he lost them. J.G. testified that if he were released, he would take his medications until "Tri-County" let him off of them because there is nothing wrong with him. He explained that he had a mood disorder when he entered the Hospital and was on "very little medication." J.G. stated that he could "mark a bank and use the bank." He said that the doctor has been told that he, J.G., does not have "that bank." J.G. testified that he "own[s] all things," and that he owns "everything in the telephone book."

The evidence that J.G. demonstrates disorganized thought process with delusions of owning Wal-Mart, the Hospital, shopping malls, "all things", and "everything in the telephone book," coupled with his belief that if he sits, he will lose his businesses, "the war," or suffer "very significant losses," satisfies the requirement of evidence of a recent overt act or a continuing pattern of behavior showing J.G.'s distress and the deterioration of his ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035((a)(2)(C)(ii), (e). Moreover, J.G.'s inability to provide for his food and health are demonstrated by his refusal to eat the cafeteria meals, instead relying on large amounts of Glucerna and snacks, leading to ongoing constipation and noncompliance with his medications. *See id.* Further, he cannot demonstrate his ability to provide for his food or basic needs because his plans after being released from the Hospital amount to nothing more than delusions or speculation. J.G. believes that he has oil and should have "service people" provide him with money and "handle[] everything" even though he admits that these people are now dead or that he lost them. *See id.*

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that J.G. is experiencing substantial mental and physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety. *See id.*; *In re J.F.C.*, 96 S.W.3d at 266. Consequently, the evidence is legally sufficient to support the trial court's order.

## PSYCHOACTIVE MEDICATION ORDER

In his second and third issues, J.G. contends that the evidence is legally insufficient to support the trial court's order to administer psychoactive mediations, and that the evidence is legally and factually insufficient to support the trial court's finding that administration of psychoactive medication was in his best interest.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable

7

fact finder could have disbelieved or found incredible.  *Id.*  This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis.  *Id.*  The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations.  *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).  In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings.  *Id.* at 27-29.  Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding.  *In re J.F.C.*, 96 S.W.3d at 266.  If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient.  *Id.*

**Applicable Law**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services.  TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2017).  The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient.  *Id.* § 574.106(a -1).  "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  *Addington*, 588 S.W.2d at 570.  In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.  TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (West 2017).

**Analysis**

First, J.G. argues that because the evidence is legally insufficient to support the trial court's order for renewing an order for inpatient extended mental health services, the trial court erred in ordering the administration of psychoactive medications. However, we have determined that the evidence is legally sufficient to support the trial court's order renewing an order for inpatient extended mental health services. Therefore, the trial court's order authorizing the Department to administer psychoactive medications to J.G. is also valid. *See id.* § 574.106(a). We overrule J.G.'s second issue.

In his third issue, J.G. argues that the evidence is legally and factually insufficient to support the trial court's finding that administration of psychoactive medication was in his best interest. His contention is that the evidence regarding his best interest was largely conclusory. In the application, Tsyss concluded that if J.G. were treated with the proposed medications, his prognosis was improved reality testing. However, if not treated, the prognosis would be continued deterioration. According to Tsyss's testimony at the hearing, J.G. verbally refused to accept medications voluntarily, stating that Lithium causes constipation and refused to take that medication on a number of occasions. Further, J.G. was ambiguous that he had a mental illness or needed to take psychiatric medications. On July 5, 2018, J.G. told Tsyss that he had a "degree of mood disorder" and stated that he did not want to take antipsychotic medications, but would do so if he had to. According to Tsyss, J.G. is reluctant to accept his psychiatric diagnosis, denies that he has a psychosis, and is not able to engage in a productive discussion of the risks and benefits of psychiatric medications. Tsyss stated that the medications were in J.G.'s best interest and that his hospital stay would be shorter if these medications are used. He did not recall if J.G. complained of any side effects other than constipation from the medications. Nor has J.G. voiced any religious or constitutional objections to his medications.

J.G. testified that other than constipation, he has had no other side effects from his prescribed medications. Nor did he have any religious or constitutional objections to taking the medications. He said that he "always need[ed] his medications," stating that he did not have any objections to taking his medications. Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that treatment with the proposed medications was in J.G.'s best interest. *See* TEX. HEALTH &

SAFETY CODE ANN. § 574.106(a-1), (b); *In re J .F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

Having determined that the evidence is legally sufficient to support the finding, we now address factual sufficiency of the evidence. *See In re C.H.*, 89 S.W.3d at 27–29. At the hearing, there was no testimony that J.G. had any objections to taking the proposed medications, with J.G. stating that he needed his medications. Furthermore, J.G. did not allude to any side effects or religious objections to taking these medications. Based upon our review of the record as a whole, the trial court could have formed a firm belief or conviction that the proposed medications were in J.G.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1), (b); *see also In re C.H.*, 89 S.W.3d at 25. Therefore, the evidence is factually sufficient to support the trial court's order. We overrule J.G.'s third issue.

### DISPOSITION

Having overruled J.G.'s first, second, and third issues, we *affirm* the trial court's orders.

BRIAN HOYLE
Justice

Opinion delivered January 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2019**

**NO. 12-18-00204-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF J.G.**

Appeal from the County Court at Law
of Cherokee County, Texas (Tr.Ct.No. 39,221)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's orders.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's orders below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*